### In The
# United States Court of Appeals
### For The Fourth Circuit

**HENRY DARGAN MCMASTER, in his official capacity as Governor of the State of South Carolina; and SOUTH CAROLINA DEPARTMENT OF LABOR, LICENSING AND REGULATION,**

*Plaintiffs–Appellants,*

v.

**UNITED STATES DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, in her official capacity as Secretary of Labor; OCCUPATIONAL SAFETY & HEALTH ADMINISTRATION; and DAVID KEELING, in his official capacity as Assistant Secretary for Occupational Safety and Health,**

*Defendants–Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA

———————

## BRIEF OF APPELLANTS

———————

Robert E. Horner
S.C. DEP'T OF LABOR, LICENSING
& REGULATION
P.O. Box 11329
Columbia, South Carolina 29211
803-896-4199
bob.horner@llr.sc.gov

*Counsel for S.C. Dep't of Labor,
Licensing & Regulation*

Wm. Grayson Lambert
*Chief Legal Counsel*
Erica Wells Shedd
*Deputy Legal Counsel*
Tyra S. McBride
*Deputy Legal Counsel*
OFFICE OF THE GOVERNOR
South Carolina State House
1100 Gervais Street
Columbia, South Carolina 29201
(803) 734-2100
glambert@governor.sc.gov
eshedd@governor.sc.gov
tmcbride@governor.sc.gov

*Counsel for Governor McMaster*

## RULE 26.01 DISCLOSURE STATEMENT

Governor McMaster is a state official, and the Department of Labor, Licensing & Regulation is a state agency. Neither therefore has a parent corporation or any stock.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................... ii

INTRODUCTION ...................................................................................... 1

JURISDICTIONAL STATEMENT ............................................................. 3

STATEMENT OF THE ISSUE .................................................................... 4

STATEMENT OF THE CASE ..................................................................... 4

    A.   OSHA increases federal civil penalties in 2016 and demands that state plans do the same ................................................................... 4

    B.   OSHA goes years without enforcing this mandate ............................... 8

    C.   The Governor and LLR bring this case soon after OSHA takes its first enforcement steps ................................................................. 11

SUMMARY OF THE ARGUMENT ........................................................... 13

STANDARD OF REVIEW ....................................................................... 14

ARGUMENT ........................................................................................... 14

   I.   OSHA's nonenforcement eliminated any injury from the 2016 interim final rule being issued before the Governor and LLR sued ................................. 14

    A.   Nonenforcement can eliminate any credible threat ............................ 15

    B.   OSHA went years without enforcing the 2016 interim final rule's mandate ................................................................................. 20

  II.   The Governor and LLR brought their claims less than a year after OSHA took the first steps to enforce the mandate on state civil penalties ............ 22

    A.   The Governor and LLR faced a credible threat in 2022 ..................... 23

    B.   The Governor and LLR timely sued ................................................. 25

 III.   This sound conclusion is consistent with *Corner Post* ............................... 26

CONCLUSION ......................................................................................... 28

# TABLE OF AUTHORITIES

## Cases

*Am. Fed'n of Gov't Emps. v. Off. of Special Couns.*,
  1 F.4th 180 (4th Cir. 2021) ...................................................................16

*Animal Legal Def. Fund, Inc. v. Vilsack*,
  111 F.4th 1219 (D.C. Cir. 2024)...........................................................27

*Bryant v. Woodall*,
  1 F.4th 280 (4th Cir. 2021) ............................................. 15, 16, 24, 27

*Corner Post, Inc. v. Bd. of Gov. of Fed. Res. Sys.*,
  603 U.S. 799 (2024)......................................................... 12, 26, 27, 28

*Cruz v. Maypa*,
  773 F.3d 138 (4th Cir. 2014) .................................................................14

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)................................................................................18

*Doe as Next Friend of Doe #6 v. Swearingen*,
  51 F.4th 1295 (11th Cir. 2022) ................................................. 3, 26, 27

*Doe v. Duling*,
  782 F.2d 1202 (4th Cir. 1986) ..............................................................17

*Flynt v. Shimazu*,
  940 F.3d 457 (9th Cir. 2019) ................................................................26

*Hoffman v. Hunt*,
  845 F. Supp. 340 (W.D.N.C. 1994) ............................................... 21, 22

*Kenny v. Wilson*,
  885 F.3d 280 (4th Cir. 2018) ................................................................19

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)................................................................................16

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
    312 U.S. 270 (1941) ...................................................................................17

*Md. Shall Issue, Inc. v. Hogan*,
    971 F.3d 199 (4th Cir. 2020) .....................................................................19

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)....................................................................................24

*O.A. v. Trump*,
    404 F. Supp. 3d 109 (D.D.C. 2019).............................................................26

*Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.*,
    477 U.S. 619 (1986).....................................................................................25

*Penegar v. Liberty Mut. Ins. Co.*,
    115 F.4th 294 (4th Cir. 2024) ...................................................... 15, 16, 19

*Poe v. Ullman*,
    367 U.S. 497 (1961).....................................................................................21

*Rock Energy Coop. v. Vill. of Rockton*,
    614 F.3d 745 (7th Cir. 2010) ............................................................... 17, 18

*San Diego Cnty. Gun Rts. Comm. v. Reno*,
    98 F.3d 1121 (9th Cir. 1996) ......................................................................18

*Steffel v. Thompson*,
    415 U.S. 452 (1974).....................................................................................23

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014).............................................................................. 16, 19

*Tenn. Educ. Ass'n v. Reynolds*,
    No. 3:23-CV-00751, 2025 WL 1713562 (M.D. Tenn. June 19, 2025)...............18

*Torres v. Frias*,
    68 F. Supp. 2d 935 (N.D. Ill. 1999)............................................................21

*United States v. Rahimi*,
  602 U.S. 680 (2024) ...........................................................................1

*Updegrove v. Herring*,
  No. 1:20-CV-1141, 2021 WL 1206805 (E.D. Va. Mar. 30, 2021) .....................18

*Wittman v. Personhuballah*,
  578 U.S. 539 (2016)..........................................................................15

*Young v. Nickols*,
  413 F.3d 416 (4th Cir. 2005) ................................................................4

**Statutes**

28 U.S.C. § 2401(a) ............................................................................26

29 U.S.C. § 667(c)(2)...................................................................... 1, 4, 12

Minn. Stat. Ann. § 182.666.....................................................................25

N.C. Gen. Stat. Ann. § 95-138(a1) .............................................................25

**Other Authorities**

2017 S.C. FAME Report.......................................................................9, 20

2018 N.C. Follow-Up FAME Report ...............................................................10

2018 S.C. Follow-Up FAME Report ................................................................9

2019 Kentucky FAME Report ....................................................................10

2019 S.C. FAME Report................................................................... 10, 20

2020 Michigan Follow-Up FAME Report............................................................10

2020 S.C. Follow-Up FAME Report ........................................................ 10, 20

2021 Maryland FAME Report .................................................................11

2021 S.C. FAME Report................................................................ 11, 23

2021 Tennessee FAME Report.............................................................11

2024 S.C. Follow-Up FAME Report ......................................................8

Advanced Notice of Proposed Supplements to Approved Plan,
  40 Fed. Reg. 3,606 (Jan. 23, 1975)..................................................5

Arizona State Plan for Occupational Health and Safety; Proposed Reconsideration
  and Revocation,
  87 Fed. Reg. 23,783 (Apr. 21, 2022) .......................................... 10, 23

Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual
  Adjustments for 2017,
  82 Fed. Reg. 5373 (Jan. 18, 2017)..................................................6, 7

Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual
  Adjustments for 2018,
  83 Fed. Reg. 7 (Jan. 2, 2018) ............................................................7

Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual
  Adjustments for 2019,
  84 Fed. Reg. 213 (Jan. 23, 2019)......................................................7

Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual
  Adjustments for 2020,
  85 Fed. Reg. 2292 (Jan. 15, 2020).....................................................7

Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual
  Adjustments for 2021,
  86 Fed. Reg. 2964 (Jan. 14, 2021).....................................................7

Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual
  Adjustments for 2022,
  87 Fed. Reg. 2328 (Jan. 14, 2022).....................................................7

Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual
   Adjustments for 2023,
    88 Fed. Reg. 2210 (Jan. 13, 2023)...........................................................7

Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual
   Adjustments for 2024,
    89 Fed. Reg. 1810 (Jan. 11, 2024)...........................................................7

Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual
   Adjustments for 2025,
    90 Fed. Reg. 1854 (Jan. 10, 2025)...........................................................7

Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Catch-Up
   Adjustments,
    81 Fed. Reg. 43,430 (July 1, 2016)......................................................1, 6

OSHA, *State Plan Policies and Procedures Manual* (May 6, 2020)... 2, 8, 9, 24, 25

South Carolina Developmental Plan,
   37 Fed. Reg. 25,932 (Dec. 6, 1972).........................................................5

South Carolina State Plan; Final Approval Determination,
   52 Fed. Reg. 48,103 (Dec. 18, 1987).......................................................5

South Carolina; Certification of Completion of Developmental Steps,
   41 Fed. Reg. 32,424 (Aug. 3, 1976) ........................................................5

## Regulations

29 C.F.R. § 1902.47 ......................................................................................9

29 C.F.R. § 1902.49(a)...............................................................................9, 24

29 C.F.R. § 1902.50 ......................................................................................9

29 C.F.R. § 1902.52 ......................................................................................9

29 C.F.R. § 1902.53 ......................................................................................9

**Legislative Acts**

1973 S.C. Acts No. 311 ...............................................................5

1991 S.C. Acts No. 25..................................................................5

Debt Collection Improvement Act of 1996,
   Pub. L. 104-134, 110 Stat. 1321-358 (Apr. 26, 1996)............................5

Federal Civil Penalties Inflation Adjustment Act of 2015,
   Pub. L. 114-74, Title VII, 129 Stat. 584 (Nov. 2, 2015) .......................6

Occupational Safety and Health Act,
   Pub. L. 91-596, 84 Stat. 1590, 1608 (Dec. 29, 1970)............................1

**<u>INTRODUCTION</u>**

The Occupational Safety and Health Act gives each State the choice to run its own workplace safety program. *See* § 18, Pub. L. 91-596, 84 Stat. 1590, 1608 (Dec. 29, 1970). If a State chooses this option, its state plan (and the plan's administration) must "be at least as effective in providing safe and healthful employment and places of employment as" federal workplace regulations. 29 U.S.C. § 667(c)(2). This congressional directive for evaluating state plans is outcome-focused: Either a state plan produces workplaces in the State that are as safe and healthy as those governed by federal rules, or the state plan doesn't comply with the OSH Act.

Yet rather than follow Congress's instruction, the Occupational Safety and Health Administration declared in a 2016 interim final rule that state plans must reflexively adopt civil penalties that are at least as great as federal civil penalties to comply with the OSH Act—regardless of how "effective" a state plan otherwise may be. *See* Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Catch-Up Adjustments, 81 Fed. Reg. 43,430 (July 1, 2016). To be fair, OSHA insists that the mandate tracks its longstanding practice, but OSHA's position isn't consistent with the statutory text. And "[t]ext," of course, "controls over contrary historical practices." *United States v. Rahimi*, 602 U.S. 680, 718 n.2 (2024) (Kavanaugh, J., concurring).

Although OSHA published this rule in 2016, OSHA went years without

attempting to enforce it. Only in 2022 did OSHA start taking action. In a span of a few months, OSHA sought to revoke Arizona's state plan based in part on unraised civil penalties, and OSHA issued a finding in South Carolina's annual monitoring report about the state plan's civil penalties not being increased. A finding is OSHA's "formal" way of saying that South Carolina's lower civil penalties brought into "question the final approval status of the state plan" and "warrant[ed] corrective action." OSHA, *State Plan Policies and Procedures Manual* 74 (May 6, 2020), https://tinyurl.com/2s48b22c. This signaled to South Carolina that its state plan would suffer the same fate as the Arizona state plan.

Within a year after these two initial enforcement steps, the Governor and the Department of Labor, Licensing and Regulation ("LLR") brought this lawsuit to challenge the validity of OSHA's mandate on state civil penalties. But the Governor and LLR never got the chance to show why their claims have merit. The district court dismissed the two Administrative Procedure Act claims that are the focus of this appeal under an either–or theory: Either the Governor and LLR had faced a credible threat since the rule's publication in 2016 (so the limitations period had run) or they had not yet faced a credible threat (so they had no injury).

On both fronts, the district court erred. Starting with the "either," regardless of whether the Governor and LLR faced a credible threat of enforcement when OSHA first published the rule in 2016, OSHA's years of nonenforcement removed

that threat. As another circuit recently put it, a person "cannot challenge a statute enacted yesterday if there is no threat of enforcement against him today." *Doe as Next Friend of Doe #6 v. Swearingen*, 51 F.4th 1295, 1304 (11th Cir. 2022). Without any enforcement threat from OSHA, the Governor and LLR had no injury. And without an injury, they lacked standing. The statute of limitations is irrelevant in that analysis.

Turning to the "or," only in 2022 did OSHA take steps to enforce the rule. Starting the formal process to revoke another State's plan and issuing a finding in South Carolina's annual report represented a credible threat that OSHA—finally—intended to enforce the 2016 mandate. Once OSHA made that threat, the Governor and LLR had an Article III injury, and they brought their claims in less than a year, well before § 2401(a)'s six-year window closed.

The district court therefore erred in dismissing the two APA claims. This Court should reverse that decision and remand the case for the Governor and LLR to litigate the merits.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1291. The district court granted OSHA's motion to dismiss on July 21, 2025. J.A.236. The Governor and LLR appealed on August 20, 2025. J.A.239. Although the dismissal was without

prejudice, J.A.236, "no amendment could cure" the dismissal of these two claims, so this Court has jurisdiction, *Young v. Nickols*, 413 F.3d 416, 418 (4th Cir. 2005).

## STATEMENT OF THE ISSUE

OSHA issued an interim final rule in 2016 demanding that state plans increase their civil penalties to match federal ones, but OSHA never sought to enforce this mandate until 2022. The Governor and LLR brought this case—including two APA claims—within months of OSHA's enforcement efforts in 2022.

The question presented is whether those APA claims are timely under 28 U.S.C. § 2401(a)'s six-year statute of limitations.

## STATEMENT OF THE CASE

### A. OSHA increases federal civil penalties in 2016 and demands that state plans do the same.

**1.** When Congress enacted the OSH Act to promote safe and healthy workplaces, it gave States two choices: Let federal standards govern their workplaces or run their own state plans instead. South Carolina accepted the invitation to have its own plan, and the State has successfully managed that plan for half a century. For States like South Carolina that choose to run their own plan, that plan's standards and enforcement must "be at least as effective in providing safe and healthful employment and places of employment as" federal ones. 29 U.S.C. § 667(c)(2).

The Secretary of Labor gave South Carolina initial approval to operate its state

4

plan in 1972. *See* South Carolina Developmental Plan, 37 Fed. Reg. 25,932 (Dec. 6, 1972). The State "submitted supplements to the plan involving developmental changes" over the next few years. Advanced Notice of Proposed Supplements to Approved Plan, 40 Fed. Reg. 3,606, 3,606 (Jan. 23, 1975). One change included an increase in the state plan's civil penalties to the levels set in the OSH Act. *See* 1973 S.C. Acts No. 311, § 1. The State ultimately completed all developmental steps in 1976. *See* South Carolina; Certification of Completion of Developmental Steps, 41 Fed. Reg. 32,424 (Aug. 3, 1976). And the state plan eventually received final approval in 1987. *See* South Carolina State Plan; Final Approval Determination, 52 Fed. Reg. 48,103 (Dec. 18, 1987).

**2.** Congress has twice increased federal civil penalties for OSHA violations. The first was in 1990 with the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 101-410, 104 Stat. 890 (Oct. 5, 1990). This act also required most federal agencies to adjust their civil penalties every five years. *See id.* § 4, 104 Stat. at 891. OSHA, however, was one of a few agencies that Congress later exempted from this requirement to make subsequent adjustments. *See* Debt Collection Improvement Act of 1996, § 31001(s)(1), Pub. L. 104-134, 110 Stat. 1321-358, 1321-373 (Apr. 26, 1996). South Carolina amended its civil penalties the next year to match the updated OSHA penalties. *See* 1991 S.C. Acts No. 25 (codified at S.C. Code Ann. § 41-15-320).

The second increase came in 2015, and it removed OSHA's exemption from periodic penalty increases. *See* Federal Civil Penalties Inflation Adjustment Act of 2015, Pub. L. 114-74, Title VII, 129 Stat. 584, 599 (Nov. 2, 2015). This act required a one-time adjustment to the federal civil penalties "through an interim final rulemaking" process. *Id.* § 701(b)(1)(D), 129 Stat. at 599. It also shortened the frequency of inflation adjustments from five years to one, *id.* § 701(b)(1)(A), 129 Stat. at 599, and exempted these adjustments from 5 U.S.C. § 553's notice-and-comment requirements, *id.* § 701(b)(1)(D), 129 Stat. at 599.

Consistent with the 2015 act, OSHA issued an interim final rule the next year. *See* 2016 Interim Final Rule, 81 Fed. Reg. 43,430. But that rule never explained how the OSH Act or the related regulations required (or even permitted OSHA to require) state civil penalties to match federal ones. OSHA just said the law required it. *Id.* at 43,447. At most, the 2016 interim final rule includes a single rationale for raising penalties (though not even necessarily for having *matching* penalties): Higher penalties are more likely to deter violations. *Id.* at 43,445. And the rule also noted that higher civil penalties meant more revenue for government—as if that has any bearing on the effectiveness of a state plan. *See id.* at 43,446.

OSHA responded to comments on the 2016 interim final rule in the 2017 annual adjustment. *See* Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2017, 82 Fed. Reg. 5373 (Jan. 18, 2017). But again,

OSHA didn't explain how the OSH Act supported its mandate. Instead, OSHA just noted its "long-standing position that 'at least as effective,' in this context, means that State Plans must have maximum and minimum penalty levels that are at least as high as OSHA's maximum and minimum penalty levels," *id.* at 5375, and that state civil penalties had "historically . . . matched" federal ones, *id.* at 5376.

OSHA has issued inflation adjustments for federal civil penalties every year since 2017. *See* Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2025, 90 Fed. Reg. 1854 (Jan. 10, 2025); Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2024, 89 Fed. Reg. 1810 (Jan. 11, 2024); Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2023, 88 Fed. Reg. 2210 (Jan. 13, 2023); Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2022, 87 Fed. Reg. 2328 (Jan. 14, 2022); Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2021, 86 Fed. Reg. 2964 (Jan. 14, 2021); Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2020, 85 Fed. Reg. 2292 (Jan. 15, 2020); Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2019, 84 Fed. Reg. 213 (Jan. 23, 2019); Dep't of Labor Federal Civil Penalties Inflation Adjustment Act Annual Adjustments for 2018, 83 Fed. Reg. 7 (Jan. 2, 2018).

**B.     OSHA goes years without enforcing this mandate.**

Despite the 2016 interim final rule and these annual adjustments, OSHA went years without trying to enforce the mandate on state civil penalties.

First, a brief primer on how OSHA may enforce that mandate. Every year, OSHA issues a "Federal Annual Monitoring Evaluation ("FAME") report for a state plan. OSHA, *State Plan Policies and Procedures Manual*, at G-3. The "main purpose" of the FAME report is to "analyze" annually "a State Plan's performance to determine whether it is continuing to maintain its [at least as effective] status." *Id.* at 72.

In a FAME Report, OSHA may list "new issues" that "have the potential of having a substantial impact on the State Plan's performance." *Id.* at G-4. These issues can run the gamut from news reports to recent litigation to whistleblower complaints. *See, e.g., id.*; 2024 S.C. Follow-Up FAME Report, at 5, https://tinyurl.com/32e9su4v (noting recent state litigation as a "new issue"). FAME reports also list "observations." OSHA, *State Plan Policies and Procedures Manual*, at 75. Observations are for issues on which "concern is limited" or if the concern "cannot yet be determined to impact the effectiveness of the State Plan." *Id.*

In contrast with "new issues" and "observations," FAME reports may also include "findings." *Id.* at 74 Findings are reserved for "issues that warrant corrective action by the State Plan to ensure it is [at least as effective]" as federal standards. *Id.*

8

Findings bring into "question the final approval status of a State Plan," *id.*, and OSHA has declared that findings "require[] corrective action," *id.* at 75; *see also id.* at A-4 (explaining that "[e]ach finding in the FAME Report must have a corresponding recommendation").

If the State fails to comply, OSHA's ultimate enforcement weapon is revocation. *See* 29 C.F.R. § 1902.47. When OSHA determines that a deficiency with a state plan is great enough (*i.e.*, something that could be a finding in a FAME report), OSHA can begin revocation proceedings with a notice in the Federal Register. *Id.* § 1902.49(a). There is then an informal, legislative-type hearing, *id.* § 1902.50, after which the Assistant Secretary decides whether to revoke a state plan's final approval and publishes his decision in the Federal Register, *id.* § 1902.52; *id.* § 1902.53.

With that background, turn to OSHA's prolonged inaction. In the 2017 FAME Report, OSHA noted that South Carolina had not increased its penalties because the State had "not yet completed the legislative changes to increase maximum penalties." 2017 S.C. FAME Report, at 17, https://tinyurl.com/55sm8xbb. The next year, OSHA merely flagged the civil penalties as a "[n]ew [i]ssue[]" that "may be a finding" in the next FAME report if the State did "not take significant steps to adopt" the increased penalties that year. 2018 S.C. Follow-Up FAME Report, at 6, https://tinyurl.com/6jzrcxfn. But when the next year came and still South Carolina

hadn't enacted legislation to update the civil penalties, OSHA didn't make the penalties a finding like it had said. It simply noted—yet again—that the State had "not yet completed the legislative changes to increase maximum penalties." 2019 S.C. FAME Report, at 5, https://tinyurl.com/5n7pdvxu. And so with the 2020 FAME Report. It left the civil penalties as a "[n]ew [i]ssue[]." 2020 S.C. Follow-Up FAME Report, at 5, https://tinyurl.com/2sx3dcew.

OSHA's inaction wasn't unique to South Carolina. OSHA took no steps during these years to enforce the 2016 mandate on any other state plan during these years. In 2018, OSHA also told North Carolina, Indiana, Kentucky, Maryland, Michigan, Minnesota, Tennessee, and Utah that unincreased penalties "may be a finding" in the next FAME report. *E.g.*, 2018 N.C. Follow-Up FAME Report, at 6, https://tinyurl.com/bdcyydmv. But OSHA didn't issue a finding the next year. *E.g.*, 2019 Kentucky FAME Report, at 6, https://tinyurl.com/mpr5nzyk. Or the next. *E.g.*, 2020 Michigan Follow-Up FAME Report, at 4, https://tinyurl.com/42kkh3zr.

In 2022, things changed. It started with Arizona. In April, OSHA published notice in the Federal Register to begin revoking Arizona's state plan. *See* Arizona State Plan for Occupational Health and Safety; Proposed Reconsideration and Revocation, 87 Fed. Reg. 23,783 (Apr. 21, 2022). Part of OSHA's justification for this enforcement was Arizona's unincreased civil penalties. *See id.* at 23,786–87.

A few months later, OSHA turned its sights to South Carolina (and to other

States). OSHA issued a finding about the civil penalties in South Carolina's FAME Report for the first time, converting what had previously been merely a "new issue" to a formal finding. *See* 2021 S.C. FAME Report, at 18, https://tinyurl.com/5dx2en3r. And OSHA issued the same new finding to the other States that hadn't increased civil penalties. *E.g.*, 2021 Maryland FAME Report, at 17, https://tinyurl.com/478d88k2; 2021 Tennessee FAME Report, at 22, https://tinyurl.com/2hptr68p.

**C.    The Governor and LLR bring this case soon after OSHA takes its first enforcement steps.**

Just weeks after OSHA made the state civil penalties a finding in the 2021 FAME Report, the Governor and LLR sought to challenge the mandate on state civil penalties. *See McMaster v. U.S. Dep't of Lab.*, No. 3:22-cv-2603 (D.S.C.). That case took a narrow approach, challenging the mandate in the 2022 adjustment. But the district court held that the 2022 adjustment wasn't reviewable agency action under the APA and dismissed the case. *See* Order, *McMaster v. U.S. Dep't of Lab.*, No. 3:22-cv-2603 (D.S.C. Mar. 2, 2023), ECF No. 34.

Unable to pursue a narrow challenge to the latest adjustment, the Governor and LLR filed this case, bringing broader claims and specifically challenging OSHA's legal theory that it can require state civil penalties to match federal ones. This case included eight claims, two of which are important for this appeal. The first of those is claim four. J.A.17–18. It alleged that the 2016 interim final rule was

arbitrary and capricious because it did not adequately explain why state civil penalties had to match federal ones to comply with the OSH Act's requirement that state plans be "at least as effective" as federal regulations "in providing safe and healthful employment and places of employment." 29 U.S.C. § 667(c)(2). The second claim is claim six, which asserted that OSHA unlawfully used the 2015 federal penalties act to amend 29 C.F.R. § 1902.4(c)(2)(xi) without notice and comment. J.A.19–20.

OSHA initially moved to dismiss the case, and part of its argument was that claims four and six were untimely. J.A.4 (ECF No. 12). Before the district court could decide that motion, it stayed proceedings pending the Supreme Court's decision in *Corner Post, Inc. v. Board of Governors of Federal Reserve System*, 603 U.S. 799 (2024), which also involved a question about § 2401(a)'s statute of limitations. J.A.5 (ECF No. 30).

Once the stay was lifted after the Court decided *Corner Post*, OSHA again moved to dismiss all eight claims on various theories, including reasserting its § 2401(a) argument on claims four and six. J.A.40–42. While that motion was pending and as required by the district court's scheduling order, the Governor and LLR moved for summary judgment on the merits. J.A.194. But before OSHA could respond on the merits, the district court granted the motion to dismiss. J.A.236.

On the claims that matter here (four and six), the district court dismissed them

under its either–or theory J.A.231–234. It concluded that if the 2016 publication harmed the Governor and LLR, the six-year limitations period started then and expired before the Governor and LLR filed this lawsuit. Alternatively, the district court said that there was still no credible threat of enforcement, so the Governor and LLR had suffered no injury.

The Governor and LLR timely appealed. J.A.239.

## SUMMARY OF THE ARGUMENT

**I.** The district court wrongly concluded that the interim final rule's publication in 2016 made claims four and six untimely. By focusing solely on the statute of limitations, the district court ignored the more fundamental question of whether there was a continuous credible threat of enforcement that constituted an Article III injury. There was not. OSHA did nothing for years to enforce the 2016 mandate on state civil penalties, and in fact, OSHA even backed away from its initial threat against South Carolina's state plan. Without a credible threat, the Governor and LLR had no injury, so even if § 2401(a)'s limitation window had not expired, they couldn't have brought a claim.

**II.** OSHA's 2022 actions created a credible threat. Whether it was the finding in South Carolina's FAME report or beginning the formal process of revoking Arizona's final approval, OSHA finally took clear steps to show that it intended to enforce the mandate in the 2016 interim final rule. That meant the Governor and

LLR faced a distinct credible threat and had standing. They timely brought their claims after this injury accrued. The district court therefore erred in dismissing claims four and six.

**III.** This conclusion is consistent with *Corner Post*. There, the Supreme Court made clear that a plaintiff needed both final agency action and an injury to bring an APA claim. The Governor and LLR checked both boxes when they brought this case.

## STANDARD OF REVIEW

This Court reviews an order dismissing a case de novo. *Cruz v. Maypa*, 773 F.3d 138, 143 (4th Cir. 2014).

## ARGUMENT

The district court held that either the Governor and LLR "were injured in 2016" when OSHA published the interim final rule, so their claims were "untimely" under 28 U.S.C. § 2401(a)'s six-year window, or if the claims weren't time barred, the Governor and LLR "still face[d] no credible threat and thus [had] no injury" from OSHA's 2022 enforcement actions. J.A.234. The district court erred on both conclusions.

**I.    OSHA's nonenforcement eliminated any injury from the 2016 interim final rule being issued before the Governor and LLR sued.**

The district court's analysis on the 2016 interim final rule focused on § 2401(a) and missed that the critical question was whether the Governor and LLR

faced an ongoing credible threat such that they always had an Article III injury that a court could remedy. Because that credible threat went away, the statute of limitations is irrelevant. Without an injury, there was no claim that the Governor or LLR could have brought—even if there were still time left on the limitations clock.

Put another way, it doesn't matter whether the Governor and LLR faced a credible threat from the 2016 interim final rule's publication. They don't challenge the longstanding rule that recently enacted laws can create a credible threat because courts presume the government will enforce them. *See, e.g.*, *Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021). Instead, the Governor and LLR rely on the equally well-established rule that "persistent non-enforcement" eliminates any credible threat and leaves a plaintiff without an Article III injury. *Id.* The district court ignored that latter rule and OSHA's five years of inaction.

### A.   Nonenforcement can eliminate any credible threat.

**1.** As this Court recently put it, "a plaintiff's alleged injury must exist *at the time she files her complaint*." *Penegar v. Liberty Mut. Ins. Co.*, 115 F.4th 294, 303 (4th Cir. 2024) (emphasis added). And a plaintiff must continue suffering that injury "throughout the life of the lawsuit." *Wittman v. Personhuballah*, 578 U.S. 539, 543 (2016). This life-of-the-lawsuit requirement recognizes that a plaintiff can have an injury that goes away while the case is pending. When that happens, the case is moot. *See, e.g.*, *Am. Fed'n of Gov't Emps. v. Off. of Special Couns.*, 1 F.4th 180, 187 (4th

Cir. 2021) ("a case is moot if, at any point prior to the case's disposition, one of the elements essential to standing, like injury-in-fact, no longer obtains").

An injury can even disappear before a lawsuit begins. That was the situation in *Penegar*. That plaintiff had suffered a monetary loss, but the defendant had compensated her for that loss before she sued. 115 F.4th at 303. She therefore lacked standing. *Id.* Although this case doesn't involve money damages, the principle still stands: Injuries can be resolved before a plaintiff comes to court. And if they are, that plaintiff lacks a necessary element of "an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), even if the plaintiff possessed that element previously.

**2.** When the injury that brings a plaintiff to court is a credible threat of enforcement, sustained nonenforcement can be the reason that injury disappears. A plaintiff may bring a preenforcement challenge only when he faces a "credible threat" of enforcement. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014). One way to show this credible threat is to challenge a recently enacted law; the assumption there is that the government wouldn't enact a law that it didn't intend to enforce. *E.g.*, *Bryant*, 1 F.4th at 286. In addition to a law being new, "past enforcement against the same conduct is good evidence" that a plaintiff faces a credible threat. *Susan B. Anthony List*, 573 U.S. at 164.

But when a law isn't enforced, there is no credible threat. "[T]he fact that state

officials stand ready to perform their general duty to enforce laws" isn't sufficient. *Doe v. Duling*, 782 F.2d 1202, 1206 (4th Cir. 1986). Nor are "past threats." *Id.* Instead, the threat must be "both real and immediate." *Id.*

This rule means that a point comes when a law's enactment is no longer recent enough to give rise to a credible threat. In other words, whatever threat existed from the law being enacted fades as the government doesn't enforce it.

**3.** To be sure, drawing a bright-line rule for when the credible threat no longer exists "would be difficult, if it would be possible." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (discussing when a controversy exists under the Declaratory Judgment Act). But drawing a bright line isn't necessary here. For now, the Court simply needs to recognize that it wouldn't be breaking any ground to hold that five years of nonenforcement can eliminate a credible threat.

Consider, as just one example, the Seventh Circuit's decision in *Rock Energy Cooperative v. Village of Rockton*, 614 F.3d 745 (7th Cir. 2010). A town and a cooperative were fighting over who would own assets of a local natural gas and electrical utility. *Id.* at 746. The town passed an ordinance in 2005 that asserted the power to condemn those assets. *Id.* The cooperative ultimately took possession of the utility's assets, and the town kept pressing to purchase them from the cooperative, eventually sending a letter threatening to condemn them. *Id.* at 746–47. That prompted the cooperative to sue in 2009, seeking a declaration that the town

hadn't complied with certain legal requirements to be able to acquire the assets. *Id.* at 747. The Seventh Circuit held that there was no evidence that the town was "waiting to pounce" with its claimed eminent domain power. *Id.* at 748. Despite that power being asserted almost five years before, the town did "nothing other than write a letter or two indicating that condemnation was on the table." *Id.* at 749. That wasn't enough for a credible threat, so the cooperative lacked an injury. *Id.*

The examples continue. A district court in Tennessee held that less than four years between an act's enactment and a lawsuit was long enough to mean those plaintiffs lacked a credible threat. *See Tenn. Educ. Ass'n v. Reynolds*, No. 3:23-CV-00751, 2025 WL 1713562, at *4 (M.D. Tenn. June 19, 2025) (challenge to a law regulating certain ideas that could be not be taught in public schools). The Ninth Circuit determined that about two years with no prosecutions was long enough to find a plaintiff lacked standing. *See San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1128 (9th Cir. 1996) (challenge to the 1994 federal Crime Control Act), *abrogated in part on other grounds by District of Columbia v. Heller*, 554 U.S. 570 (2008). And the Eastern District of Virginia concluded that even "almost nine months" of nonenforcement after a law's enactment was sufficient to "diminish[]" any credible threat. *Updegrove v. Herring*, No. 1:20-CV-1141, 2021 WL 1206805, at *3 (E.D. Va. Mar. 30, 2021) (dismissing claim for lack of standing).

**4.** Section 2401(a)'s six-year limitations window does not impact this

credible-threat question. How long a plaintiff has to bring a lawsuit does not change whether someone has a "well-founded fear" of enforcement. *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 218 (4th Cir. 2020). Instead, the question is whether the government's actions show a "credible threat" when a plaintiff sues. *Susan B. Anthony List*, 573 U.S. at 160. Because if there's no such threat, the plaintiff isn't suffering an injury "at the time she files her complaint." *Penegar*, 115 F.4th at 303. A past injury won't support injunctive relief. A plaintiff needs "an ongoing or future injury" for that remedy. *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018). After all, in cases challenging a law's validity, the plaintiff typically seeks declaratory and injunctive relief, not damages. So it doesn't matter if a plaintiff still has time on the statute-of-limitations clock if the credible threat is gone. Without the credible threat, there's no injury. And without an injury, there's no standing.

Two quick illustrations confirm this. One, say an agency issued a new regulation in an administration's waning days, but a new administration promptly said it wouldn't enforce that rule. That assurance of nonenforcement would remove any threat of prosecution, even if § 2401(a)'s window had not closed. *See Md. Shall Issue, Inc.*, 971 F.3d at 218 (government statement that certain conduct would not violate the law means that a plaintiff doesn't face a credible threat). And two, suppose a State had a 50-year statute of limitations, but it went 47 years without enforcing a law after its enactment. Those almost four dozen years of inaction would

surely overcome the "recently enacted" theory, despite the limitations period not having expired.

**B.    OSHA went years without enforcing the 2016 interim final rule's mandate.**

Perhaps the Governor and LLR faced a credible threat when OSHA first issued the 2016 interim final rule. If so, they could have sued soon thereafter. If they had, maybe OSHA would have defended the case on the merits, or maybe OSHA would have fought that preenforcement challenge on standing grounds.

But what OSHA might have done then does not matter. All that matters now is that OSHA went years without enforcing the mandate on state plans. True, OSHA noted in the 2017 FAME Report that the state plan hadn't increased its civil penalties. 2017 S.C. FAME Report, at 17. And the next year OSHA said the unincreased civil penalties "may be a finding" the next year. 2018 Follow-Up S.C. FAME Report, at 6. At that point, *perhaps* OSHA could be still seen as threatening to enforce the 2016 interim final rule's mandate.

But the next year came, and OSHA issued no finding. 2019 S.C. FAME Report, at 5. Nor did OSHA issue a finding the following year. 2020 S.C. Follow-Up Fame Report, at 5. In other words, OSHA stepped back from its 2018 enforcement posture and its threat to make the civil penalties a finding. Thus, by the time OSHA issued the 2020 report, five years had elapsed—and not a hint of enforcement.

OSHA's nonenforcement was even more pronounced given that OSHA *knew* that state plans were not complying with the mandate. Decades ago, the Supreme Court held that a challenge to Connecticut's prohibition on contraceptives wasn't ripe because Connecticut was not enforcing that law, despite contraceptives being "commonly and notoriously sold" throughout the State. *Poe v. Ullman*, 367 U.S. 497, 502 (1961). In other words, without a credible threat, those plaintiffs could not get into court, even if they were openly violating the law. That rule still stands, and state plans noncompliance with OSHA's 2016 mandate was known to all.

So what were the Governor and LLR supposed to conclude? OSHA essentially said, "You need to do this—or else." But for half a decade, the "or else" never came. It's like a library that posts, "Overdue books will result in fines." Yet month after month, patrons return books weeks late, and no one is ever charged a cent. Borrowers eventually come to understand that the warning has no real consequences. In other words, there's no credible threat that the library will enforce the posted late fees. As a district court once put it in a case challenging how Chicago enforced its municipal ordinances, "[a]ctions speak louder than words." *Torres v. Frias*, 68 F. Supp. 2d 935, 941 (N.D. Ill. 1999). OSHA's (in)action screams nonenforcement of the mandate in the 2016 interim final rule.

That inaction also makes the district court's reliance on *Hoffman v. Hunt*, 845 F. Supp. 340 (W.D.N.C. 1994), inapposite. *See* J.A.233. The plaintiffs there

challenged a North Carolina law restricting speech outside abortion clinics on First and Fourteenth Amendment grounds. 845 F. Supp. at 343. But those plaintiffs brought their claims "just over two months" after North Carolina enacted that law. *Id.* at 347 n.3. This brand-new statute was so new that it was "not even yet adolescent." *Id.* at 347. Here, on the other hand, OSHA went years without enforcing the 2016 interim final rule's mandate, demonstrating that OSHA was not "very eager" to enforce it, as North Carolina was with its abortion-speech statute. *Id.*

\* \* \*

So even if the 2016 interim final rule's publication was sufficient to create a credible threat initially, by 2021, five years had elapsed without OSHA taking any meaningful steps to enforce that rule's mandate. Any enforcement threat was thus no longer credible, and any injury from that threat dissipated. Without an injury, the Governor and LLR couldn't bring a case in federal court, despite § 2401(a)'s six years not having expired. And if the Governor and LLR couldn't bring a case after any threat from the rule's 2016 publication dissipated, then the statute of limitations becomes irrelevant and cannot bar claims four and six.

## II.    The Governor and LLR brought their claims less than a year after OSHA took the first steps to enforce the mandate on state civil penalties.

Rather than dwell on the interim final rule's 2016 publication, the focus here is whether the Governor and LLR suffered a new injury from a distinct enforcement threat that presents a justiciable controversy with a new limitations period. More

concretely, the question is whether OSHA's 2022 actions—from the Arizona Notice in the Federal Register to the finding in South Carolina's FAME report—created a credible threat that gave the Governor and LLR an injury on which they could bring their claims.

The district court said no, J.A.234, but the district court was wrong. These actions created a new credible threat, unrelated to the rule's publication in 2016. Any threat from the publication was based on the rule being newly enacted. The threat in 2022 was from OSHA's concrete enforcement steps—steps that OSHA had not taken until then. That new threat created an injury that allowed the Governor and LLR to bring claims four and six, and they timely did so.

### A. The Governor and LLR faced a credible threat in 2022.

OSHA finally began following through on the "or else" in 2022 in two ways. One was the beginning of revocation proceedings against Arizona. *See* 87 Fed. Reg. 23,783 (published Apr. 21, 2022). Enforcement against one state plan was enough to put other States on notice. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("prosecution of . . . [a] companion" is sufficient for a credible threat). And just months later, OSHA issued South Carolina's 2021 S.C. FAME Report, which *finally* included a finding about the state plan's civil penalties. 2021 S.C. FAME Report, at 18. (Of course, other States received similar findings about this same time.) With these two acts, OSHA showed its intent to enforce the mandate such that the

Governor and LLR faced a credible threat.

The district court said that, if the Governor and LLR weren't injured by the 2016 interim final rule, then they "still face[d] no credible threat." J.A.234. That ignores what OSHA did in 2022. OSHA's manual ties what can be a finding to the OSH Act's "at least as effective" requirement. *See* OSHA, *State Plan Policies and Procedures Manual* 74. That finding is a "fix it or else" statement—take "corrective action," *id.*, or face the consequences for being out of compliance with the OSH Act. *Id.* And if that somehow weren't enough, the Arizona Notice was the first legally required step in the revocation process. *See* 29 C.F.R. § 1902.49(a).

How much more of the process must take place before the enforcement threat is real? After all, a plaintiff need not "fly as a canary into a coal mine," *Bryant*, 1 F.4th at 286, or "bet the farm," *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007), to be able to challenge a law. If the first legally required step against another State is not enough to be a credible threat, it's hard to fathom what would be enough before revocation was final. This would effectively read preenforcement challenges out of federal jurisprudence.

South Carolina wasn't the only State to draw this conclusion from OSHA's 2022 actions. Other States that had not increased their civil penalties interpreted OSHA's 2022 actions as marking a new, serious threat. For instance, North Carolina quickly enacted legislation to update its penalties. S*ee* N.C. Gen. Stat. Ann. § 95-

138(a1) (amended effective Oct. 1, 2022). And Minnesota did the same thing the next year. *See* Minn. Stat. Ann. § 182.666 (amended effective July 1, 2023).

Below, OSHA made much of the fact that a FAME Report doesn't necessarily mean that revocation will follow and that Arizona's proposed revocation was withdrawn. *See* J.A.233. Neither point supports the district court's conclusion. When it comes to an Article III injury, a credible threat doesn't require a plaintiff to show that he will *definitely* face the ultimate harm from the government enforcing a law against him. A "reasonable threat of prosecution" is enough to "create[] a ripe controversy." *Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 n.1 (1986). A finding can lead to revocation proceedings because a finding is about an issue "that warrant[s] corrective action by the State Plan to ensure it is [at least as effective]" as federal standards. OSHA, *State Plan Policies and Procedures Manual* 74. And the Arizona Notice made plain that OSHA was now shifting to enforce the 2016 interim final rule.

## B.    The Governor and LLR timely sued.

At this point, the case gets easy. Whether the injury here came with OSHA issuing South Carolina's 2021 FAME report or publishing the Arizona Notice in the Federal Register (or both), the Governor and LLR were injured in 2022 when they faced a credible threat. This threat is a new injury that started a new limitations period. *See Doe as Next Friend of Doe #6*, 51 F.4th at 1304 ("Because the

enforcement of an unconstitutional statute causes an injury, a person can challenge a statute enacted long ago based on a new threat of enforcement"); *Flynt v. Shimazu*, 940 F.3d 457, 463 (9th Cir. 2019) ("With each new injury, a new claim arises, and the statute of limitations period begins anew.").

Section 2401(a) gave the Governor and LLR six years from that credible threat to bring their claims (assuming, of course, they still faced a credible threat when they brought them). *See* 28 U.S.C. § 2401(a). They filed this case in March 2023, less than a year after the injury. Claims four and six are therefore timely, and the district court erred when it concluded otherwise.

## III.   This sound conclusion is consistent with *Corner Post*.

**A.** This conclusion is consistent with—and indeed, compelled by—*Corner Post*. As the Supreme Court explained, "[a]n APA plaintiff does not have a complete and present cause of action until she suffers an injury from final agency action, so the statute of limitations does not begin to run until she is injured." 603 U.S. at 809.

The final agency action here is the 2016 interim final rule. *See, e.g.*, *O.A. v. Trump*, 404 F. Supp. 3d 109, 133 n.8 (D.D.C. 2019) (interim final rules can be final agency action under 5 U.S.C. § 704). And yes, that was more than six years old when the Governor and LLR filed this case, but final agency action is only half of the matter.

The other half is the injury. *Corner Post*, 603 U.S. at 799 ("injury, not just

finality, is required to sue under the APA"). As just explained, any injury from the 2016 interim final rule's publication went away when OSHA delayed enforcing the mandate for more than five years. And "past injuries alone are insufficient to establish standing" when a plaintiff "seeks declaratory and injunctive relief." *Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219, 1227 (D.C. Cir. 2024). So the Governor and LLR had no injury once there was no credible threat. OSHA hadn't enforced the mandate against them, and without a threat that OSHA would do so, they had no way to seek prospective relief.

But when OSHA finally took the first steps in 2022 to enforce that mandate, the Governor and LLR faced a new credible threat. That is cognizable as an injury under Article III. *See Bryant*, 1 F.4th at 287–88; *Doe as Next Friend of Doe #6*, 51 F.4th at 1304.

Any other conclusion flouts the Supreme Court's rejection of the idea "that facial challenges to agency rules are different." *Corner Post*, 603 U.S. at 813. The Supreme Court plainly refused to adopt a one-shot rule for challenging federal regulations because § 2401(a) "operates as a statute of limitations rather than a statute of repose." *Id.* at 812. Yet a statute of repose is what the district court's conclusion amounted to: Because the Governor and LLR didn't challenge the 2016 interim final rule within six years, they can't challenge it now. *See* J.A.234. *Corner Post* forecloses that logic.

**B.** Reversing the district court also promotes an efficient judicial system. Were a plaintiff required to sue within six years or be left with "no recourse," "no matter how serious the injury," there would be a rush to the courthouse with every new federal rule. *Corner Post*, 603 U.S. at 824. There's no reason or need to encourage such hurried lawsuits.

Courts should instead employ a rule that ensures the facts can develop more fully before lawsuits have to be filed. With the benefit of knowing how (or even whether) an agency will enforce a regulation, disputes will be more concrete or may even be resolved without litigation. Courts will be better equipped to decide the cases that eventually come before them, which should lead to better decisions both for the litigants and for the public.

## CONCLUSION

For these reasons, the Court should reverse the district court's order dismissing claims four and six as untimely, and the case should be remanded for further proceedings.

Respectfully submitted,

<u>s/Wm. Grayson Lambert</u>
Wm. Grayson Lambert
*Chief Legal Counsel*
Erica Wells Shedd
*Deputy Legal Counsel*
Tyra S. McBride
*Deputy Legal Counsel*
OFFICE OF THE GOVERNOR
South Carolina State House
1100 Gervais Street
Columbia, South Carolina 29201
(803) 734-2100
glambert@governor.sc.gov
eshedd@governor.sc.gov
tmcbride@governor.sc.gov

*Counsel for Governor McMaster*

Robert E. Horner
S.C. DEP'T OF LABOR, LICENSING &
REGULATION
P.O. Box 11329
Columbia, South Carolina 29211
803-896-4199
bob.horner@llr.sc.gov

*Counsel for S.C. Dep't of Labor,*
*Licensing & Regulation*

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    This brief contains *6,864* words.

2.  This brief complies with the typeface and type style requirements because:

    This brief has been prepared in a proportionally spaced typeface using *Microsoft Word* in *14 pt Times New Roman*.


Dated: <u>October 15, 2025</u>        <u>s/Wm. Grayson Lambert</u>
                                               *Counsel for Governor McMaster*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 15th day of October, 2025, I caused this *Brief of Appellants* to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel of record.

s/Wm. Grayson Lambert
*Counsel for Governor McMaster*
