No. 25-1986

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HENRY MCMASTER, *in his official capacity as Governor of the State of South Carolina*, SOUTH CAROLINA DEPARTMENT OF LABOR, LICENSING AND REGULATION,

Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF LABOR, LORI CHAVEZ-DEREMER, *in her official capacity as Secretary of Labor*, OCCUPATIONAL SAFETY & HEALTH ADMINISTRATION, DAVID KEELING, *in his official capacity as Assistant Secretary for Occupational Safety and Health*,

Defendants-Appellees.

On Appeal from the United States District Court
for the District of South Carolina

## BRIEF FOR APPELLEES

*Of Counsel:*

JONATHAN BERRY
　*Solicitor of Labor*
EDMUND C. BAIRD
*Associate Solicitor for*
*Occupational Safety and Health*
LOUISE M. BETTS
　*Counsel for Appellate Litigation*
LINDA WILES
　*U.S. Department of Labor*
　*Office of the Solicitor*
　*200 Constitution Ave., NW*
　*Washington, DC 20210*

BRETT A. SHUMATE
　*Assistant Attorney General*

BRYAN P. STIRLING
　*United States Attorney*

MICHAEL S. RAAB
J. KAIN DAY
　*Attorneys, Appellate Staff*
　*Civil Division, Room 7234*
　*U.S. Department of Justice*
　*950 Pennsylvania Avenue NW*
　*Washington, DC 20530*
　*(202) 514-4214*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ........................................................1

STATEMENT OF THE ISSUE ..............................................................1

STATEMENT OF THE CASE ................................................................1

     A.     Statutory Background...............................................1

     B.     Factual Background.................................................5

     C.     Prior Proceedings .................................................9

SUMMARY OF ARGUMENT ................................................................12

STANDARD OF REVIEW....................................................................14

ARGUMENT........................................................................................14

I.     Plaintiffs' Suit Was Filed After the Expiration of the Six-Year Limitations Period.................................................................16

II.    Plaintiffs' "New Injury" Theory Has Not Been Preserved and Is Deeply Flawed .........................................................................21

CONCLUSION .....................................................................................31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Artis v. District of Columbia,*
583 U.S. 71 (2018) ......................................................................25

*Bowen v. City of New York,*
476 U.S. 467 (1986) ...................................................................20

*Bryant v. Woodall,*
1 F.4th 280 (4th Cir. 2021).............................17, 23, 26, 27

*Chambers v. North Carolina Dep't of Just.,*
66 F.4th 139 (4th Cir. 2023).................................................14

*Corner Post, Inc. v. Board of Governors of the Federal Reserve System,*
603 U.S. 799 (2024) ........................................... 10, 12, 16, 24

*DeSuze v. Ammon,*
990 F.3d 264 (2d Cir. 2021)...................................................18

*Doe v. Duling,*
782 F.2d 1202 (4th Cir. 1986) .............................................23

*Flynt v. Shimazu,*
940 F.3d 457 (9th Cir. 2019) ...............................................24

*Holland v. Florida,*
560 U.S. 631 (2010) ...................................................................19

*Independent Equip. Dealers Ass'n v. EPA,*
372 F.3d 420 (D.C. Cir. 2004)................................................8

*Irwin v. Department of Veterans Affs.,*
498 U.S. 89 (1990) ...........................................................10, 19

*Jackson v. Modly,*
949 F.3d 763 (D.C. Cir. 2020).............................................18

*Kannapel v. Hudson,*
12 F.3d 205 (4th Cir. 1993) ..................................................20

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ...................................................................... 17

*McMaster v. U.S. Dep't of Lab.,*
   No. 3:22-cv-2603 (D.S.C. dismissed Aug. 8, 2022) ........... 7, 8, 10, 11, 19

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) ...................................................................... 17

*Muth v. United States,*
   1 F.3d 246 (4th Cir. 1993) .............................................................. 21

*National R.R. Passenger Corp. v. Morgan,*
   536 U.S. 101 (2002) ...................................................................... 24

*Poe v. Ullman,*
   367 U.S. 497 (1961) ...................................................................... 24

*Rock Energy Cooperative v. Village of Rockton,*
   614 F.3d 745 (7th Cir. 2010) .......................................................... 27

*San Diego County Gun Rights Committee v. Reno,*
   98 F.3d 1121 (9th Cir. 1996) .......................................................... 27

*Steffel v. Thompson,*
   415 U.S. 452 (1974) ...................................................................... 29

*Tennessee Educ. Ass'n v. Reynolds,*
   No. 3:23-cv-00751, 2025 WL 1145260 (M.D. Tenn. Apr. 17, 2025) ..... 28

*Tennessee Education Ass'n v. Reynolds,*
   No. 3:23-cv-00751, 2025 WL 1713562 (M.D. Tenn. June 19, 2025) .... 28

*Thunder Basin Coal Co. v. Reich,*
   510 U.S. 200 (1994) ...................................................................... 25

*Updegrove v. Herring,*
   No. 1:20-cv-1141, 2021 WL 1206805 (E.D. Va. Mar. 30, 2021) ........... 28

*Warfaa v. Ali,*
   1 F.4th 289 (4th Cir. 2021) ............................................................. 18

*Weick v. O'Keefe,*
  26 F.3d 467 (4th Cir. 1994) ....................................................... 20

**Federal Statutes and Legislative Materials**

5 U.S.C. § 706 .................................................................................. 8

28 U.S.C. § 1291 ............................................................................... 1

28 U.S.C. § 1331 ............................................................................... 1

28 U.S.C. § 2401(a) .................................................................. 9, 12, 16

29 U.S.C. § 651 ............................................................................ 1, 14

29 U.S.C. § 651(b) ............................................................................. 2

29 U.S.C. § 651(b)(11) ...................................................................... 3

29 U.S.C. § 652(8) ............................................................................. 2

29 U.S.C. § 655(b) ............................................................................. 2

29 U.S.C. § 658(a) ............................................................................. 2

29 U.S.C. § 659 ................................................................................. 2

29 U.S.C. § 666 ............................................................................ 2, 14

29 U.S.C. § 667(a) ............................................................................. 3

29 U.S.C. § 667(b) ............................................................................. 3

29 U.S.C. § 667(c) ......................................................................... 3, 14

29 U.S.C. § 667(e) ............................................................................. 3

29 U.S.C. § 667(f) ...................................................................... 4, 5, 17

29 U.S.C. § 667(g) ..................................................................... 3, 5, 25

Bipartisan Budget Act of 2015,
  Pub. L. No. 114-74, 129 Stat. 584 ...................................................... 2

Occupational Safety and Health Act of 1970,
  Pub. L. No. 91-596, 84 Stat. 1590 ....................................................... 1, 14

Omnibus Budget Reconciliation Act of 1990,
  Pub. L. No. 101-508, 104 Stat. 1388 .................................................... 2

S. Rep. No. 91-1282 (1970) ..................................................................... 1

**<u>Federal Regulations and Administrative Materials</u>**

29 C.F.R. § 1902.4(c)(2)(xi) .................................................. 5, 8, 15, 16

29 C.F.R. §§ 1902.47-1902.53 ............................................................... 5, 17

29 C.F.R. §§ 1902.49 ................................................................................ 5

29 C.F.R. §§ 1902.52 ................................................................................ 5

29 C.F.R. §§ 1955.1-1955.47 .................................................................. 5

29 C.F.R. §§ 1955.4 ................................................................................. 5

36 Fed. Reg. 20,751 (Oct. 29, 1971) .................................................... 4

37 Fed. Reg. 25,932 (Dec. 6, 1972) ...................................................... 6

41 Fed. Reg. 32,424 (Aug. 3, 1976) ...................................................... 6

52 Fed. Reg. 48,103 (Dec. 18, 1987) ..................................................... 6

77 Fed. Reg. 3,912 (Jan. 25, 2012) ....................................................... 2

81 Fed. Reg. 43,430 (July 1, 2016) ............................................... 3, 15, 16

82 Fed. Reg. 5,373 (Jan. 18, 2017) ........................................................ 4

87 Fed. Reg. 2,328 (Jan. 14, 2022) ........................................................ 3

87 Fed. Reg. 23,783 (Apr. 21, 2022) ................................................... 30

90 Fed. Reg. 27,878 (June 30, 2025) ..................................................... 2

**State Statutes**

Act of June 12, 1973, No. 311, 1973 S.C. Acts 376..............................6, 15

Act of Apr. 24, 1991, No. 25, 1991 S.C. Acts 105................................6, 15

S.C. Code Ann. § 41-15-320.................................................................15

**Other Authorities**

OSHA, U.S. Dep't of Lab., *FY 2017 Comprehensive Federal Annual Monitoring Evaluation (FAME) Report*..............................................6, 26

OSHA, U.S. Dep't of Lab., *FY 2018 Follow-Up Federal Annual Monitoring Evaluation (FAME) Report*...................................................6

OSHA, U.S. Dep't of Lab., *FY 2019 Comprehensive Federal Annual Monitoring Evaluation (FAME) Report*...................................................6

OSHA, U.S. Dep't of Lab., *FY 2020 Follow-Up Federal Annual Monitoring Evaluation (FAME) Report*...................................................6

OSHA, U.S. Dep't of Lab., *FY 2021 Comprehensive Federal Annual Monitoring Evaluation (FAME) Report*..............................7, 10, 11, 29

OSHA, U.S. Dep't of Lab., *State Plan Policies and Procedures Manual* (May 6, 2020) ......................................................................................4

## STATEMENT OF JURISDICTION

Plaintiffs Governor Henry McMaster and the South Carolina Department of Labor, Licensing and Regulation invoked the district court's jurisdiction under 28 U.S.C. § 1331. J.A.10. The district court dismissed plaintiffs' complaint without prejudice on July 21, 2025. J.A.237. Plaintiffs filed a timely notice of appeal on August 20, 2025. J.A.239. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court correctly dismissed plaintiffs' Administrative Procedure Act (APA) claims as untimely.

## STATEMENT OF THE CASE

### A. Statutory Background

**1.** Congress enacted the Occupational Safety and Health (OSH) Act in 1970. Pub. L. No. 91-596, 84 Stat. 1590 (codified as amended at 29 U.S.C. § 651 *et seq.*). Before that Act, a patchwork of private policies, federal law, and state law governed occupational safety. *See* S. Rep. No. 91-1282, at 3-4 (1970). But those measures proved ineffective: in the four years preceding the OSH Act's adoption, "more Americans [had] been killed where they work[ed] than in the Vietnam [W]ar." *Id.* at 2. This crisis demanded "national attention," *id.*, so Congress legislated to

ensure workplace health and safety throughout the nation, *see* 29 U.S.C. §§ 651(b), 655(b).

By delegation, the Occupational Safety and Health Administration (OSHA) administers the OSH Act.[1] It has authority to promulgate "occupational safety and health standards," which establish requirements for workplace conditions or practices. *See* 29 U.S.C. §§ 652(8), 655(b). It also enforces those standards. *Id.* § 659. OSHA can issue citations for violations of the OSH Act, *id.* § 658(a), and impose civil penalties based on those violations, *id.* § 666.

Any monetary penalty imposed must fall within pre-defined ranges, which Congress initially set forth in the OSH Act. *See* 29 U.S.C. § 666. Those ranges were amended once in 1990, and they are now subject to a yearly adjustment for inflation. *See* Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508, tit. III, subtitle B, § 3101, 104 Stat. 1388, 1388-89; Bipartisan Budget Act of 2015, Pub. L. No. 114-74, tit. VII, § 701, 129 Stat. 584, 599-601. Every year, starting in 2016, OSHA has

---

[1] The Secretary of Labor has delegated most of her responsibilities under the OSH Act to the Assistant Secretary for Occupational Safety and Health, who heads OSHA. *See* 77 Fed. Reg. 3,912 (Jan. 25, 2012); 90 Fed. Reg. 27,878 (June 30, 2025). This brief uses "Assistant Secretary" and "OSHA" interchangeably.

published a final rule adjusting its penalty amounts. *E.g.*, 81 Fed. Reg. 43,430 (July 1, 2016); 87 Fed. Reg. 2,328 (Jan. 14, 2022).

**2.** When Congress enacted the OSH Act, it also encouraged States to take the "fullest responsibility" for the health and safety of workers in those States. 29 U.S.C. § 651(b)(11). Congress allowed States to fill any gaps left by OSHA standards, *id.* § 667(a), and it provided States with a path for preempting federal regulation entirely, *id.* § 667(b).

To take that path, a State must submit a "State plan" to OSHA for approval. 29 U.S.C. § 667(b). If the plan meets certain conditions, OSHA is obligated to approve it. *Id.* § 667(c). For example, each State plan must establish health and safety standards that are "at least as effective" as OSHA's standards. *Id.* § 667(c)(2). State enforcement mechanisms—like citations and civil penalties—must also be "at least as effective" as their federal counterparts. *Id.* Upon initial approval, the State plan moves into a transition period, during which federal and state authorities have concurrent authority. *Id.* § 667(e). When that period ends, OSHA may grant the State plan final approval, and the State plan will replace any federal regulation. *See id.* Decisions rejecting a State plan are subject to judicial review in the federal courts of appeals. *Id.* § 667(g).

But OSHA's role in the process does not stop there. OSHA remains responsible for the "continuing evaluation" of all State plans. 29 U.S.C. § 667(f). As part of this effort, OSHA publishes a yearly report for each State—called the Federal Annual Monitoring Evaluation (FAME) report. *See* OSHA, U.S. Dep't of Lab., *State Plan Policies and Procedures Manual* 72 (May 6, 2020), https://tinyurl.com/2p93wtfv. Much of this report focuses on whether the State plan remains at least as effective as OSHA's standards and enforcement mechanisms. *See id.*

As relevant here, OSHA has developed a "long-standing position" about what is required for a State's monetary penalties to be "at least as effective" as their federal counterparts. 82 Fed. Reg. 5,373, 5,375 (Jan. 18, 2017); *see also* 36 Fed. Reg. 20,751, 20,754 (Oct. 29, 1971). State plans "must have maximum and minimum penalty levels that are at least as high as OSHA's maximum and minimum penalty levels." 82 Fed. Reg. at 5,375. Said differently, OSHA's penalty ranges operate as a floor. Since 2016, that floor has been defined not only by the OSH Act, but also by the inflation adjustments that OSHA has promulgated each year—as Congress required. *See* 81 Fed. Reg. at 43,445 (codified as amended at

4

29 C.F.R. § 1902.4(c)(2)(xi)).  Accordingly, States must match or exceed OSHA's inflation-adjusted penalty ranges.

**3.**  In addition to monitoring compliance, OSHA has authority to revoke final approval for any State plan.  *See* 29 C.F.R. §§ 1902.47-1902.53.  To do so, it must provide the State with notice and an opportunity to respond.  *Id.* § 1902.49.  If OSHA decides that revocation is appropriate, it will reinstate concurrent federal and state authority "for a reasonable time."  *Id.* § 1902.52(b).

Separately, OSHA may withdraw approval for a State plan entirely if certain conditions are met.  29 U.S.C. § 667(f); 29 C.F.R. §§ 1955.1-1955.47 (detailing the lengthy, multi-step process for withdrawal).  Once a State plan has been withdrawn, federal law becomes effective once again, and the State only retains jurisdiction over proceedings initiated before the notice of withdraw.  *See* 29 C.F.R. § 1955.4(a).  Withdrawal decisions are subject to judicial review in the federal courts of appeals. 29 U.S.C. § 667(g).

### B.    Factual Background

**1.**  For decades, South Carolina has administered and enforced its own health and safety standards.  It received initial approval for a State

plan in 1972, just two years after Congress enacted the OSH Act.  37 Fed. Reg. 25,932 (Dec. 6, 1972).  Final approval came more than a decade later in 1987.  52 Fed. Reg. 48,103 (Dec. 18, 1987).  At that time, and for years later, South Carolina adopted the exact penalty ranges provided for in federal law.  *See* Act of June 12, 1973, No. 311, § 1, 1973 S.C. Acts 376, 376-78 (adopting OSH Act range); Act of Apr. 24, 1991, No. 25, 1991 S.C. Acts 105 (adopting 1990 amendments).  In fact, updating those penalty amounts was a condition for final approval of South Carolina's plan.  *See* 41 Fed. Reg. 32,424 (Aug. 3, 1976); 52 Fed. Reg. 48,103.

That changed in 2016.  When OSHA began adjusting its penalties for inflation, as Congress required, South Carolina failed to follow suit.  OSHA identified this shortcoming in South Carolina's 2017 FAME report[2] and continued to flag the concern in the next three reports.[3]  Then, in 2022, OSHA issued a formal "finding" that South Carolina had

---

[2] OSHA, U.S. Dep't of Lab., *FY 2017 Comprehensive Federal Annual Monitoring Evaluation (FAME) Report* 17, https://tinyurl.com/55sm8xbb.

[3] OSHA, U.S. Dep't of Lab., *FY 2018 Follow-Up Federal Annual Monitoring Evaluation (FAME) Report* 6, https://tinyurl.com/6jzrcxfn; OSHA, U.S. Dep't of Lab., *FY 2019 Comprehensive Federal Annual Monitoring Evaluation (FAME) Report* 5, https://tinyurl.com/5n7pdvxu; OSHA, U.S. Dep't of Lab., *FY 2020 Follow-Up Federal Annual Monitoring Evaluation (FAME) Report* 5, https://tinyurl.com/2sx3dcew.

failed to impose penalties at least as effective as those in the federal scheme. OSHA, U.S. Dep't of Lab., *FY 2021 Comprehensive Federal Annual Monitoring Evaluation (FAME) Report* 18, https://tinyurl.com/5dx2en3r (2021 FAME Report). It recommended only that South Carolina should "work with [its] state authorities to complete the legislative changes" necessary to come into compliance. *Id*. at 18. No revocation or withdrawal proceedings were mentioned or initiated.

**2.** Soon thereafter, plaintiffs—who administer South Carolina's plan—sued the Department of Labor, Secretary of Labor, and OSHA. *McMaster v. U.S. Dep't of Lab.* (*McMaster I*), No. 3:22-cv-2603 (D.S.C. dismissed Aug. 8, 2022). In that case, plaintiffs challenged OSHA's 2022 final rule. *See* Complaint ¶ 54, *McMaster I*, No. 3:22-cv-2603 (Aug. 8, 2022), Dkt. No. 1. The 2022 rule, promulgated a few months earlier, provided for another inflation adjustment to OSHA's penalty ranges. *Id*. at 9 (citing 87 Fed. Reg. at 2,332). It also mentioned OSHA's interpretation of when State penalties are "at least as effective" as their federal counterparts—*i.e.*, that OSHA penalty ranges operate as a floor. *Id*. Plaintiffs' suit centered on that floor-setting requirement, arguing that it violated the APA. *Id*.

7

The district court dismissed plaintiffs' first suit for lack of jurisdiction. *See* Order, *McMaster I*, No. 3:22-cv-02603 (Mar. 2, 2023), Dkt. No. 34. The APA only provides for review of final agency action. *Id.* at 7 (citing 5 U.S.C. § 706). And OSHA's mere reference to its floor-setting requirement did not qualify as such. *Id.* at 8-9. Because the rule "tread[ed] no new ground," it could not be "fairly described as implementing, interpreting, or prescribing law or policy." *Id.* (quoting *Independent Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004)). Plaintiffs have not challenged that conclusion.

During argument on defendants' motion to dismiss, plaintiffs made it clear they had made a strategic decision by not challenging the 2016 interim final rule. *See* J.A.176. After defendants' counsel invited an amended complaint, which would clarify the scope of the case (J.A.132-133), plaintiffs' counsel was insistent that an amended complaint was not needed (J.A.176). Throughout the argument, plaintiffs' counsel staked out a clear position: plaintiffs had "challenged the right thing" when they focused on the 2022 final rule. J.A.110. Plaintiffs' counsel indicated that any amendment to challenge "the OSH Act or the underlying regulation," *i.e.*, 29 C.F.R. § 1902.4(c)(2)(xi), was therefore not necessary. J.A.110.

## C. Prior Proceedings

On March 14, 2023, twelve days after the district court dismissed plaintiffs' first suit, plaintiffs filed another complaint. J.A.8-24. This time, plaintiffs challenged OSHA's 2016 interim final rule and 2017 final rule. J.A.22-23. But the arguments were essentially the same as those presented before. *See* J.A.22-23. The only meaningful difference was that plaintiffs chose to direct their efforts at the 2016 and 2017 final rules—despite their strategic choice not to do so in the prior case.

Only two of plaintiffs' claims remain at issue here: Count Four and Count Six. *See* Opening Br. 12-13 (describing these claims as "the claims that matter"). Count Four alleges that the 2016 interim final rule failed to "give adequate reasons" for adopting OSHA's floor-setting requirement. J.A.17 (quotation marks omitted). And Count Six alleges that OSHA violated the APA by adopting that requirement through an interim final rule. J.A.19-20. Both claims are brought under the APA. J.A.17, J.A.19-20.

Defendants moved to dismiss plaintiffs' complaint, arguing in part that Counts Four and Six were untimely. *See* J.A.26. A six-year statute of limitations governs claims under the APA, 28 U.S.C. § 2401(a), and

plaintiffs filed their suit more than six years after the 2016 interim final rule was promulgated.  After the Supreme Court issued its decision in *Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, 603 U.S. 799 (2024), defendants renewed that motion to dismiss.  J.A.40-42.

Plaintiffs' response on timeliness was two-fold.  First, plaintiffs argued their claims did not "accrue[]" in 2016.  J.A.64-66.  A claim accrues "when the plaintiff is injured by final agency action," *Corner Post*, 603 U.S. at 804, and plaintiffs claimed to have suffered no injury until the 2021 FAME Report, which allegedly created the first credible threat of enforcement.  *See* J.A.64-66.  Plaintiffs also relied on unrelated revocation proceedings against another state, Arizona, as supporting a new credible threat of enforcement.  Second, even if their claim did accrue in 2016, plaintiffs argued they were entitled to equitable tolling—either based on the suit in *McMaster I* or based on defendants' misconduct.  J.A.66-71.  As to the latter argument, plaintiffs contended that defendants' inaction "induced or tricked" them into believing that defendants would not enforce the 2016 interim final rule.  J.A.69 (quoting *Irwin v. Department of Veterans Affs.*, 498 U.S. 89, 96 (1990)).

The district court agreed with defendants and dismissed Counts Four and Six as untimely. J.A.231-235. The court determined that "the 2021 FAME Report" did not create "any more credible or imminent threat of enforcement than the 2016 [interim final rule] already had." J.A.233. Thus, if plaintiffs could allege any Article III injury, that injury must have occurred as of the "passage" of the 2016 interim final rule. J.A.234. Accordingly, plaintiffs' claims accrued—if at all—as of that date.

Moreover, the district court held that plaintiffs are not entitled to equitable tolling. The court determined that plaintiffs "made a strategic choice in *McMaster I* not to challenge the 2016 [interim final rule], and that decision [did] not qualify for equitable tolling." J.A.235. Nor were plaintiffs entitled to tolling based on defendants' purported "misconduct." J.A.235 (quotation marks omitted). The court found no evidence that defendants' inaction "induced, tricked, or lulled" plaintiffs into sitting on their rights. J.A.235 (quoting J.A.93). At best, plaintiffs misinterpreted defendants' actions, which the court determined does not satisfy the standard for equitable tolling. J.A.235.

## SUMMARY OF ARGUMENT

The district court properly dismissed plaintiffs' complaint as untimely. APA claims are subject to a six-year statute of limitations. *See* 28 U.S.C. § 2401(a). And that limitations period begins once a plaintiff is "injured by final agency action." *Corner Post, Inc. v. Board of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 804 (2024). In this case, plaintiffs suffered an injury no later than August 2016—the effective date of OSHA's 2016 interim final rule, which plaintiffs identify as the relevant "final agency action here." *See* Opening Br. 26. Because plaintiffs sued more than six years later, *see* J.A.8 (March 14, 2023), that suit was untimely. Moreover, as the district court found, plaintiffs' suit was not entitled to equitable tolling.

On appeal, plaintiffs offer a single response. They claim to have suffered a "new injury" in 2022 that triggered a "new limitations period." *See* Opening Br. 22. And as a necessary part of that argument, plaintiffs contend that any injury they suffered in 2016 disappeared based on defendants' persistent non-enforcement of OSHA's regulations. That argument is flawed multiple times over.

12

*First*, plaintiffs have forfeited this argument by failing to present it to the district court. Below, plaintiffs did make arguments about the non-enforcement of OSHA standards, but those arguments were far different from the "new injury" theory presented on appeal. The district court proceedings focused only on the initial accrual of a cause of action and equitable tolling—not persistent non-enforcement and the resurgence of a "new injury" that could justify a new limitations period.

*Second*, plaintiffs' "new injury" theory has no legal support. Persistent non-enforcement can—in limited circumstances—prevent any credible threat of enforcement from developing in the first place. But defendants are not aware of any precedent suggesting that non-enforcement might eliminate an already-existing threat. And even if it could, that would not justify restarting the limitations period entirely. Instead, persistent non-enforcement would operate simply to pause the limitations period for a definite time, and plaintiffs have not explained why that pause would render their claims timely.

*Third*, assuming plaintiffs' "new injury" theory is sound, it does not apply on these facts. As the district court concluded, any Article III injury

13

that plaintiffs suffered was present in 2016 and persisted through the filing of the complaint—more than six years later.  J.A.234.

## STANDARD OF REVIEW

This Court reviews the grant or denial of a motion to dismiss de novo, including dismissal based on a statute of limitations.  *Chambers v. North Carolina Dep't of Just.*, 66 F.4th 139, 141 (4th Cir. 2023).

## ARGUMENT

In 1970, Congress established a national system designed "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions."  OSH Act, Pub. L. No. 91-596, 84 Stat. 1590 (codified as amended at 29 U.S.C. § 651 *et seq.*).  OSHA is charged with administering that system, but individual States may also take responsibility for their own workplace safety standards.  To do so, a State must establish standards and enforcement mechanisms that are "at least as effective" as the federal system.  29 U.S.C. § 667(c)(2).

As relevant here, the federal system establishes a litany of enforcement mechanisms.  *See, e.g.*, 29 U.S.C. § 666.  This includes various monetary penalties, which may be imposed to address safety and health violations.  *Id.*  Generally, federal law establishes penalty

14

ranges—minimum and maximum penalties for specified types of violations. *Id.* To have enforcement mechanisms "at least as effective" as the federal system, States are required to match or exceed the federal penalty ranges. *See* 29 C.F.R. § 1902.4(c)(2)(xi); 81 Fed. Reg. 43,430.

For decades, South Carolina has administered and enforced its own occupational health and safety standards. For much of that time, South Carolina enacted penalty ranges that exactly matched the federal ranges. Act of June 12, 1973, No. 311, § 1, 1973 S.C. Acts at 376-78 (adopting OSH Act range); Act of Apr. 24, 1991, No. 25, 1991 S.C. Acts 105 (adopting Congress's 1990 amendments). But that changed in 2016. When OSHA began updating its penalty ranges to account for inflation, as Congress required, South Carolina failed to follow suit. Since then, South Carolina has fallen out of compliance with its statutory and regulatory mandates. For example, some of South Carolina's penalty levels are less than 60 percent of OSHA's corresponding penalty levels. *See* S.C. Code Ann. § 41-15-320.

In 2023, plaintiffs—who administer South Carolina's plan—filed an APA action challenging OSHA's 2016 interim final rule. As the district

15

court held, that suit was untimely. J.A.231-236. This Court should affirm.

## I. Plaintiffs' Suit Was Filed After the Expiration of the Six-Year Limitations Period

Congress imposed a six-year statute of limitations for suits against the United States, which applies to claims under the APA. 28 U.S.C. § 2401(a); *Corner Post, Inc. v. Board of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 804 (2024). Once a plaintiff is "injured by final agency action," his claim accrues, and the six-year clock begins to run. *Corner Post*, 603 U.S. at 804. Here, plaintiffs filed their suit well after that clock expired.

**1.** Plaintiffs suffered an Article III injury, and the six-year limitations period began, no later than August 2016.[4]

Plaintiffs direct their challenge at OSHA's 2016 interim final rule. *see* J.A.8-9, J.A.22; Opening Br. 26. That rule was promulgated on July 1, 2016, and it became effective a month later. *See* 81 Fed. Reg. at 43,430.

---

[4] In the district court, plaintiffs suggested that defendants had adopted a later date of first injury—January 18, 2017. *See* J.A.68. But defendants only argued that plaintiffs' complaint would be untimely even under that later date. *See* J.A.40 ("Thus, by any measure, [p]laintiffs filed suit more than six years after the 2016 amendment to 29 C.F.R. § 1902.4(c)(2)(xi).").

Pursuant to the 2016 interim final rule, South Carolina was "require[d] . . . to increase [its] penalties to reflect the federal penalties increases." *Id.* at 43,446. If South Carolina chose to ignore that obligation, as it ultimately did, it would risk adverse consequences—like revocation or withdrawal of its State plan. *See* 29 U.S.C. § 667(f) (withdrawal); 29 C.F.R. §§ 1902.47-1902.53 (revocation).

At least once it was in force, that interim final rule injured plaintiffs. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A "credible threat of future enforcement" qualifies as an Article III injury, even before actual enforcement proceedings have been initiated. *Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021). And when a plaintiff challenges a recently promulgated rule, that plaintiff generally can establish a credible threat because "courts presume the government will enforce" its rules. Opening Br. 15 (citing *Bryant*, 1 F.4th at 286). This may be true even if the plaintiff continues to follow his regulatory obligations, refusing to "bet the farm." *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007).

Here, plaintiffs faced a credible threat of enforcement once the 2016 interim final rule became effective. That rule imposed affirmative

obligations on plaintiffs, and as a recently promulgated provision, it came with a credible threat of enforcement if South Carolina chose to ignore those obligations. That threat of enforcement qualified as an Article III injury, providing plaintiffs with a complete cause of action at least by August 1, 2016. Plaintiffs do not argue otherwise. *See* Opening Br. 15.

Because plaintiffs' suit was filed in March 2023, more than six years later, it did not comply with the relevant statute of limitations. *See* J.A.8 (Complaint).

**2.** That does not, however, necessarily end the inquiry. Some courts have held that Section 2401(a) is subject to equitable tolling. *See DeSuze v. Ammon*, 990 F.3d 264, 272 (2d Cir. 2021); *Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir. 2020). Even assuming that it is, tolling is not available here.

Equitable tolling is reserved for "rare" occasions. *Warfaa v. Ali*, 1 F.4th 289, 294 (4th Cir. 2021) (quotation marks omitted). To apply, a plaintiff must have diligently pursued his rights, and some "extraordinary circumstance" must have impeded his ability to file a timely action. *Id.* (quotation marks omitted). Courts have applied equitable tolling when a plaintiff "actively pursued his judicial remedies

by filing a defective pleading during the statutory period" or when a plaintiff "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Department of Veterans Affs.*, 498 U.S. 89, 96 (1990).

As the district court held, the facts here do not support tolling. J.A.234-236. Plaintiffs can hardly be described as actively pursuing their judicial remedies. They waited six years before filing their *first* suit— which challenged a different final rule. *See* Complaint, *McMaster I*, No. 3:22-cv-02603 (Aug. 8, 2022), Dkt. No. 1. And when offered a chance to amend their complaint to squarely address the 2016 interim final rule, plaintiffs refused. *See* J.A.113, J.A.176. Plaintiffs chose to abandon any challenge against the 2016 interim final rule.

Likewise, plaintiffs have not alleged any "misconduct" that could warrant equitable tolling. *Irwin*, 498 U.S. at 96. Defendants' misconduct would need to be "extraordinary," and that is far from the case here. *See Holland v. Florida*, 560 U.S. 631, 652 (2010) (quotation marks omitted). At best, plaintiffs argue that defendants engaged in a few years of inaction, declining to enforce the 2016 interim final rule against South

Carolina.[5]  Inaction of that sort does not amount to misconduct at all, let alone the sort of extraordinary misconduct that might justify tolling. *Compare Kannapel v. Hudson*, 12 F.3d 205 (4th Cir. 1993) (per curiam) (unpublished table decision) (holding that a "mere *failure* to advise" a plaintiff of her rights was not "*affirmative* misconduct" (quotation marks omitted)), *with Bowen v. City of New York*, 476 U.S. 467, 480-81 (1986) (tolling available when government action prevented the plaintiffs from learning the facts necessary for their claim), *and Weick v. O'Keefe*, 26 F.3d 467 (4th Cir. 1994) (applying tolling when government officials "had lied" to the plaintiff about facts necessary to support her claim).

*    *    *

In sum, plaintiffs suffered an "injury based on final agency action" no later than August 1, 2016—when OSHA's interim rule became effective.  By that date, the six-year statute of limitations had begun, so that period expired no later than August 1, 2022.  Because plaintiffs' suit was filed in March 2023, more than eight months later, it did not comply with the relevant statute of limitations.  *See* J.A.8 (Complaint).  And

---

[5] Of course, OSHA did signal an intent to enforce these requirements through its FAME reports to South Carolina.  *See supra* pp. 6-7.

plaintiffs have not established a period of equitable tolling that would be sufficient to justify that delay. Accordingly, plaintiffs' suit was not timely, and the district court's judgment should be affirmed.

## II. Plaintiffs' "New Injury" Theory Has Not Been Preserved and Is Deeply Flawed

Rather than engage with the district court's statute of limitations analysis, plaintiffs offer a new argument on appeal. *E.g.*, Opening Br. 3, 15, 22. They claim to have suffered a "new injury" in 2022, which restarted the limitations period—even if plaintiffs suffered an injury in 2016 as well. *See* Opening Br. 22. That argument is not sound.

**1.** To start, plaintiffs' new argument is not properly before this Court. Arguments raised for the first time on appeal are generally forfeited, and the narrow exceptions to that rule do not apply here. *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993). Indeed, plaintiffs have not even attempted to argue in favor of an exception.

This Court's decision in *Muth*, 1 F.3d 246, is instructive. In that case, a district court had dismissed the plaintiff's complaint on statute-of-limitations grounds. *Id.* at 249. In doing so, it rejected the plaintiff's arguments that "he acted with due diligence" and that "equitable tolling extended the time in which to file [his] claim." *Id.* On appeal, however,

21

the plaintiff tried to "wrangle [his] way around the statute of limitations" in part by presenting a new "continuing injury" theory. *Id.* at 250. This Court refused to consider that argument, concluding that it had been forfeited. Here, plaintiffs similarly offer a new theory of injury on appeal. *Muth* prevents them from doing so.

In the district court, plaintiffs argued that defendants had taken "no steps to enforce" the 2016 interim final rule. J.A.56; *see also* J.A.64. But that argument arose in a markedly different context. In the proceedings below, plaintiffs relied on defendants' inaction only to argue that *no* cause of action accrued until 2022, J.A.64-65, and that plaintiffs should be entitled to equitable tolling, J.A.69-70. Neither argument appears in plaintiffs' opening brief on appeal, which makes no reference to tolling and disclaims any reliance on initial accrual arguments. Opening Br. 15 (addressing accrual). *See generally* Opening Br. 14-28.

**2.** In any event, plaintiffs' "new injury" theory has no legal support. Plaintiffs first argue that "persistent non-enforcement" might eliminate an *already-existing* injury in fact. *See* Opening Br. 15. That argument is necessary for plaintiffs to characterize their 2022 injury as "new," rather than a continuation of an injury that started in 2016. Then, plaintiffs

argue their "new injury" justifies an entirely new limitations period—restarting the clock for plaintiffs' claims. Neither premise is sound.

First, this Court has recognized that "persistent non-enforcement of a statute" might prevent an injury from occurring in the first place—barring a pre-enforcement suit when the "threat of future enforcement" was never "credible." *Bryant*, 1 F.4th at 286; *see also Doe v. Duling,* 782 F.2d 1202 (4th Cir. 1986). Plaintiffs have not cited, and we are not aware of, a case in which the Court has held that non-enforcement can eliminate a credible threat of agency enforcement.

Good reasons militate against expanding the persistent non-enforcement rule in this way. That rule is built on the idea that "non-enforcement" can reduce "the dead words of the written text to harmless, empty shadows." *Bryant*, 1 F.4th at 286 (quotation marks omitted). And the analysis focuses on whether the government has a "continued interest" in enforcing the challenged provisions. *Id*. at 288. If it does not, such that the relevant provisions are "antiques," there will be no credible threat of enforcement, and a plaintiff will lack standing. *See id*. at 287 (alteration and quotation marks omitted). It is unclear how a regulation can become an "antique[]" when the very plaintiff suing is subject to a

credible threat of enforcement. *See id.* (quotation marks omitted). In that circumstance, the government has evinced an interest in enforcing the relevant provisions. And the existence of any "tacit agreement" not to enforce the law is not possible. *Cf. Poe v. Ullman*, 367 U.S. 497, 508 (1961).

Second, there is no legal support for plaintiffs claim that they are entitled to a "new limitations period" based on their "new injury." *See* Opening Br. 22. An initial limitations period begins when a plaintiff first has a complete cause of action. *See Corner Post*, 603 U.S. at 804. And in certain circumstances, a new limitations period can start with each "discrete" injury. *E.g.*, *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (employment discrimination); *Flynt v. Shimazu*, 940 F.3d 457, 463 (9th Cir. 2019) (repeated enforcement). But neither situation applies here.

Instead, plaintiffs claim that an old injury has resurfaced. In 2016, as plaintiffs seem to acknowledge, they faced a credible threat of enforcement based on the 2016 interim final rule. *See* Opening Br. 15. According to plaintiffs, that threat disappeared sometime in the next few years and then reappeared in 2022. This fact pattern does not suggest

an entirely new injury, which triggers the limitations period for the first time, nor does it identify a set of repeated injuries. Instead, plaintiffs offer what amounts to a tolling argument. For a time, by virtue of defendants' conduct, plaintiffs claim to have been prevented from suing.[6]

As explained above (*see supra* pp. 18-20), equitable tolling is not available for mere inaction. But even if tolling were available, it would not justify an entirely "new limitations period." *Contra* Opening Br. 22. Instead, it would only serve to "pause[]" the period that had already started. *Artis v. District of Columbia*, 583 U.S. 71, 80-81 (2018) (quotation marks omitted) (discussing the ordinary operations of a "tolling" rule). Thus, to establish their suit was timely, plaintiffs would need to prove the "pause" was long enough to justify their delayed filing. They have not done so, and their appeal fails for that independent reason.

---

[6] Any claim of a new injury based on a new enforcement action would be flawed twice over. Plaintiffs challenge no final agency action that occurred in 2022. Opening Br. 26 ("The final agency action here is the 2016 interim final rule."). And the statutory framework affords plaintiffs an alternative avenue for relief. *See* 29 U.S.C. § 667(g) (providing for judicial review of withdrawal decisions). By virtue of the latter point, Congress has stripped district courts of jurisdiction over challenges to withdrawal proceedings. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).

**3.** Assuming plaintiffs' "new injury" theory is legally sound, it does not apply to the facts here. As the district court concluded, any Article III injury that plaintiffs suffered was present in 2016 and persisted through the filing of the complaint—more than six years later. J.A.234.

Contrary to plaintiffs' contention (Opening Br. 20-22), defendants' conduct does not constitute persistent non-enforcement. After South Carolina failed to keep up with the federal penalty adjustments, OSHA acted almost immediately to inform the State of that failure. *See* Opening Br. 20 (discussing 2017 FAME Report). And OSHA did not deviate from that position. To the contrary, the agency reiterated the issue in FAME reports every year. *See id.* This conduct does not suggest an "antique[]" requirement that has become a "harmless, empty shadow[]." *Bryant*, 1 F.4th at 286-87 (quotation marks omitted). Instead, it is clear evidence that OSHA intended to enforce federal law. Certainly, OSHA has not yet elected to enforce the law against South Carolina through revocation or withdrawal, but it has still engaged plaintiffs regarding their non-compliance on an ongoing basis, including through the FAME reports, in an effort to bring South Carolina's plan into alignment with the federal standards.

In *Bryant*, this Court rejected a persistent non-enforcement argument despite an even stronger factual record than the one present here. *See* 1 F.4th 280. *Bryant* involved a challenge to North Carolina statutes that criminalized pre-viability abortions. *Id.* at 283. The statutes had been on the books for more than a century, but had not been enforced for more than fifty years. *Id.* at 284. Despite this history, the Court determined that the plaintiffs still faced a credible threat of enforcement based on more recent amendments and "the political salience of the abortion debate." *Id.* at 287-88. If the conduct in *Bryant* was sufficient to constitute a credible threat of enforcement, OSHA's consistent threat of enforcement against South Carolina here suffices as well.

Plaintiffs' extra-circuit authorities do not support a contrary conclusion. *See* Opening Br. 17-18. In *Rock Energy Cooperative v. Village of Rockton*, 614 F.3d 745, 748 (7th Cir. 2010), the record was "startlingly devoid of evidence" that the defendant was "waiting to pounce with an eminent-domain action." Similarly, in *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1126-27 (9th Cir. 1996), the plaintiffs only had an "indefinite intention" to violate the challenged act and had

27

failed to even identify "a general threat [of prosecution] made against them." Here, by contrast, South Carolina is in clear violation of the law, and OSHA made specific communications identifying that very fact.

Plaintiffs also cite two inapposite district court decisions. In *Updegrove v. Herring,* No. 1:20-cv-1141, 2021 WL 1206805 (E.D. Va. Mar. 30, 2021), the plaintiffs had identified nothing beyond the defendants' "plan to enforce the [challenged] statute generally." *Id.* at *3 (emphasis omitted). That was not enough to provide a credible threat of enforcement. *Id.* And in *Tennessee Education Ass'n v. Reynolds*, No. 3:23-cv-00751, 2025 WL 1713562, at *4 (M.D. Tenn. June 19, 2025), the plaintiffs alleged only a "subjective chill on their expression" and a "subjective fear of enforcement." "None of the individual plaintiffs" had even received a "warning letter" about their conduct. *See Tennessee Educ. Ass'n v. Reynolds,* No. 3:23-cv-00751, 2025 WL 1145260, at *5 (M.D. Tenn. Apr. 17, 2025). Put simply, in both district court cases, the threats were general at best. But the facts here are different. Even before the 2021 FAME Report, OSHA repeatedly informed South Carolina of its failure to comply with the specific federal law at issue— the 2016 interim final rule.

**4.** Even setting all this aside, plaintiffs' argument is self-defeating. If persistent non-enforcement eliminated any credible threat of enforcement before 2022, nothing that OSHA did that year created a new threat that could justify standing. *See* J.A.234.

Consider, for example, South Carolina's 2021 FAME Report. That report included a new "finding" based on South Carolina's failure to update its penalty ranges. 2021 FAME Report at 18. And OSHA findings are generally limited to issues that warrant corrective action. But the corrective action OSHA proposed was not new in 2021. It merely directed plaintiffs to "work with [their] state authorities to complete the legislative changes" necessary to come into compliance. *Id.* That recommendation did not portend a new threat of enforcement, as distinct from any threat that might have existed before the report issued.

Similarly, OSHA's revocation proceedings against Arizona created no new credible threat of enforcement for South Carolina. It may be true that prosecution of a "companion" can provide a credible threat of enforcement, *see Steffel v. Thompson*, 415 U.S. 452, 459 (1974), but South Carolina was in no way Arizona's companion. Those States operated entirely distinct State plans. *But see id.* at 455-56 (the relevant

"companion" joined the plaintiff in the illegal activity, resulting in that companion's "arrest[] and . . . arraign[ment]"). Moreover, the revocation proceedings against Arizona were multi-faceted, with the penalty ranges forming only a small part of the proceedings. *See* 87 Fed. Reg. 23,783 (Apr. 21, 2022). Given these differences, there is no basis for plaintiffs to infer a new, imminent threat of enforcement based on the Arizona proceedings.

Plaintiffs' contrary argument misses the point. The question is not whether OSHA's actions in 2022, considered on their own, might constitute a credible threat of enforcement. *See* Opening Br. 22-25. Instead, the relevant inquiry demands *assuming* that OSHA's actions before 2022 amounted to persistent non-enforcement and then asking whether an enforcement proceeding against a *different* state under *different* circumstances and a single FAME report that *did not mention* revocation or withdrawal serve to revive a regulation that had become dead letter. As the district court held, there is no basis for such a conclusion on this record. *See* J.A.234.

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

*Of Counsel:*

BRETT A. SHUMATE
  *Assistant Attorney General*

BRYAN P. STIRLING
  *United States Attorney*

JONATHAN BERRY
  *Solicitor of Labor*
EDMUND C. BAIRD
  *Associate Solicitor for*
  *Occupational Safety and Health*
LOUISE M. BETTS
  *Counsel for Appellate Litigation*
LINDA WILES
  *U.S. Department of Labor*
  *Office of the Solicitor*

  *200 Constitution Ave., NW*
  *Washington, DC 20210*

MICHAEL S. RAAB

  *s/ J. Kain Day*
J. KAIN DAY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7234*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4214*
  *j.kain.day@usdoj.gov*

January 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,016 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ J. Kain Day*
J. Kain Day

# CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ J. Kain Day*
J. Kain Day