## In The
# United States Court of Appeals
### For The Fourth Circuit

HENRY DARGAN MCMASTER, in his official capacity as Governor of the State of South Carolina; and SOUTH CAROLINA DEPARTMENT OF LABOR, LICENSING AND REGULATION,

*Plaintiffs–Appellants,*

**v.**

UNITED STATES DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, in her official capacity as Secretary of Labor; OCCUPATIONAL SAFETY & HEALTH ADMINISTRATION; and DAVID KEELING, in his official capacity as Assistant Secretary for Occupational Safety and Health,

*Defendants–Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA

---

### REPLY BRIEF OF APPELLANTS

---

Robert E. Horner
S.C. DEP'T OF LABOR, LICENSING
& REGULATION
P.O. Box 11329
Columbia, South Carolina 29211
803-896-4199
bob.horner@llr.sc.gov

*Counsel for S.C. Dep't of Labor, Licensing & Regulation*

Wm. Grayson Lambert
*Chief Legal Counsel*
Erica Wells Shedd
*Deputy Legal Counsel*
Tyra S. McBride
*Deputy Legal Counsel*
Cameron R. Cox
*Deputy Legal Counsel*
OFFICE OF THE GOVERNOR
South Carolina State House
1100 Gervais Street
Columbia, South Carolina 29201
(803) 734-2100
glambert@governor.sc.gov
eshedd@governor.sc.gov
tmcbride@governor.sc.gov
ccox@governor.sc.gov

*Counsel for Governor McMaster*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

REPLY BRIEF ........................................................................................................ 1

    I.    Any credible threat from the 2016 interim final rule's publication went away after OSHA went years without enforcing that rule ........................... 2

        A.   A credible threat can disappear from agency nonenforcement ............. 3

        B.   OSHA's nonenforcement eliminated any credible threat from the 2016 interim final rule's publication ................................................. 9

    II.   The Governor and LLR faced a credible threat when OSHA began enforcing the rule in 2022 ........................................................................... 11

CONCLUSION........................................................................................................ 18

# **TABLE OF AUTHORITIES**

## **Cases**

*Bryant v. Woodall,*
  1 F.4th 280 (4th Cir. 2021)................................................................. *passim*

*Corner Post, Inc. v. Bd. of Gov. of Fed. Res. Sys.,*
  603 U.S. 799 (2024) ...............................................................................6

*CVLR Performance Horses, Inc. v. Wynne,*
  792 F.3d 469 (4th Cir. 2015) ................................................................14

*Doe as Next Friend of Doe #6 v. Swearingen,*
  51 F.4th 1295 (11th Cir. 2022)...............................................................7

*Doe v. Duling,*
  782 F.2d 1202 (4th Cir. 1986)............................................................7, 8

*Flynt v. Shimazu,*
  940 F.3d 457 (9th Cir. 2019)................................................................15

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives,*
  14 F.4th 322 (4th Cir. 2021) ..................................................................6

*Muth v. United States,*
  1 F.3d 246 (4th Cir. 1993)....................................................................12

*N.Y. State Pistol & Rifle Ass'n v. City of N.Y.,*
  590 U.S. 336 (2020) ...............................................................................6

*Penegar v. Liberty Mut. Ins. Co.,*
  115 F.4th 294 (4th Cir. 2024)................................................................6

*Poe v. Ullman,*
  367 U.S. 497 (1961) ..........................................................................3, 10

*Root v. County of Fairfax,*
  541 Fed. App'x 333 (4th Cir. 2013)......................................................14

*San Diego Cnty. Gun Rts. Comm. v. Reno*,
  98 F.3d 1121 (9th Cir. 1996) ...................................................................5

*Steffel v. Thompson*,
  415 U.S. 452 (1974) ...........................................................................16

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ................................................................. 5, 14, 15

*United States v. Boyd*,
  5 F.4th 550 (4th Cir. 2021) ............................................................ 12, 13

*United States v. Texas*,
  599 U.S. 670 (2023) ...........................................................................5

*Updegrove v. Herring*,
  No. 1:20-CV-1141, 2021 WL 1206805 (E.D. Va. Mar. 30, 2021) ........................5

*Virginia v. Am. Booksellers Ass'n, Inc.*,
  484 U.S. 383 (1988) ...........................................................................8

*Yee v. City of Escondido, Cal.*,
  503 U.S. 519 (1992) ..........................................................................12

## Other Authorities

2018 S.C. Follow-Up FAME Report ..................................................................9

2019 S.C. FAME Report .............................................................................9

2020 S.C. Follow-Up FAME Report .................................................................10

2021 S.C. FAME Report ...........................................................................17

OSHA, *State Plan Policies and Procedures Manual* (May 6, 2020) ....................9, 17

**Regulations**

Arizona State Plan for Occupational Health and Safety; Proposed Reconsideration and Revocation, 87 Fed. Reg. 23,783 (Apr. 21, 2022)..........................................16

# REPLY BRIEF

OSHA's response brief confirms that this case turns on two questions. First, did any credible threat from OSHA's promulgation of the 2016 interim final rule dissipate after OSHA went years without enforcing that rule? And second, did the Governor and LLR face a new credible threat in 2022 when OSHA finally began enforcing the rule? The answer to both questions is *yes*. The district court therefore erred in dismissing claims four and six.

On the first question, a "credible threat of enforcement" injury—by definition—goes away once the threat is no longer credible. A law's enactment generally creates a credible threat, but if government officials don't enforce it, that threat and the injury go away. OSHA's suggestion that nonenforcement can prevent a credible threat from arising yet cannot eliminate an existing credible threat conflicts with both logic and caselaw. Here, OSHA did not enforce the mandate on state civil penalties for half a decade, despite many state plans flouting it. By not enforcing the mandate, any credible threat from the rule's publication in 2016 went away.

Turning to the second question, a new credible threat arose when OSHA finally began enforcing the mandate on state civil penalties in 2022. OSHA began by initiating revocation proceedings against Arizona's state plan, citing its unincreased penalties as part of the reason for the revocation. Next, OSHA made

South Carolina's unincreased penalties a finding in the State's FAME report, effectively telling the State Plan that OSHA was serious about making the State Plan increase its penalties to (in OSHA's mistaken view) comply with the OSH Act's "at least as effective" standard.

This new, distinct credible threat in 2022 created a new Article III injury. The Governor and LLR timely sued, so this Court should reverse and remand for further proceedings.

**I.     Any credible threat from the 2016 interim final rule's publication went away after OSHA went years without enforcing that rule.**

The Governor and LLR have not argued that the 2016 interim final rule didn't create a credible threat when OSHA enacted it. Instead, their argument is that their injury here cannot be measured from 2016 because any threat from the rule's publication dissipated after OSHA failed to follow through on its early warning that it would make the State Plan's unincreased civil penalties a finding in a FAME report.

In their opening brief, the Governor and LLR explained how OSHA consistently failed to enforce the 2016 interim final rule's mandate on state civil penalties. OSHA observed in South Carolina's 2018 FAME Report that the State Plan had not increased its civil penalties and noted that such failure may be a finding the next year. But OSHA didn't make the unincreased penalties a finding the next year. Or the next. Not in South Carolina, nor in any other State. Ultimately, OSHA

2

went five years without enforcing the 2016 interim final rule's mandate. In fact, it's worse than that: OSHA actually backtracked during these years, failing to follow through on its threat to issue a finding against the State Plan. And OSHA backtracked despite the "common[] and notorious[]" way that state plans across the country were not complying with OSHA's mandate on state civil penalties. *Poe v. Ullman*, 367 U.S. 497, 502 (1961); *see* Opening Br. 9–10, 20–22.

OSHA doesn't dispute any of that as a factual matter. Instead, OSHA pushes a flawed legal theory.

### A. A credible threat can disappear from agency nonenforcement.

**1.** Everyone agrees that the persistent nonenforcement rule exists. *See* Resp. Br. 23. But OSHA seeks to create a novel limit to this rule: "[p]ersistent non-enforcement can . . . prevent any credible threat from developing in the first place," but nonenforcement cannot "eliminate an already existing threat." *Id.* at 13. This limitation defies common sense, caselaw, and *Corner Post*—not to mention basic standing jurisprudence.

Start with common sense. OSHA's newfound limitation on the "persistent nonenforcement" rule cannot coexist with the well-established rule that recently enacted laws create a credible threat by their newness alone. *See Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021) ("a court presumes that a legislature enacts a statute with the intent that it be enforced"). A hypothetical proves as much: Say that a State

adopted a law five decades ago. That law (like every law) came with an immediate, credible threat of enforcement. And say that the State enforced that law originally, but the State then went three decades without enforcing. After those decades, a plaintiff who was engaged in the prohibited conduct when the law was enacted and had continually and openly engaged in that same conduct challenges the law's constitutionality, claiming that he faced a credible threat. Of course, that's nonsense, and a court would dismiss the case. But OSHA's rule wouldn't allow a court to dismiss that case. This plaintiff faced a credible threat 50 years ago and 30 years ago, and nonenforcement cannot (OSHA insists) "eliminate an already-existing threat." Resp. Br. 13. OSHA's rule would, in other words, essentially squeeze the persistent nonenforcement rule out of existence for anyone who faced the original credible threat from the rule's enactment.

After all, no law is an "antique" at first. Resp. Br. 23 (quoting *Bryant*, 1 F.4th at 287). At some point, every law was newly enacted. So somewhere in that law's existence, it shifted from newly enacted (with a credible threat of enforcement) to an antique (without that threat). Whenever that change happened, someone went from facing a credible threat (and having an Article III injury) to not facing that threat (and thus lacking an Article III injury).[1]

_____

[1] There's another suggestion that might be (it's not clear) part of OSHA's argument. At one point, OSHA says that it is "not aware of[] a case in which the Court has held that non-enforcement can eliminate a credible threat of *agency*

Caselaw applies this logic. Look no further than some of the cases that the Governor and LLR cited in their opening brief. One example is *Updegrove v. Herring*, No. 1:20-CV-1141, 2021 WL 1206805 (E.D. Va. Mar. 30, 2021). That case involved a challenge to the Virginia Values Act, which had been enacted less than a year before the plaintiff sued. That law, like the 2016 interim final rule here, came with a presumption that officials would enforce it. *See Bryant*, 1 F.4th at 286. Yet that credible threat did not create standing because (at least in part) of nonenforcement. *Updegrove*, 2021 WL 1206805, at *3. So that plaintiff had an injury from a credible threat on the day that Virginia enacted the Virginia Values Act, but nonenforcement eliminated that threat. This same logic applies to the plaintiffs who challenged the Crime Control Act, yet they lacked standing because there was no record of prosecutions in the two years in which the act had been law. *See San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1128–29 (9th Cir. 1996).

*Corner Post* is another insurmountable hurdle to OSHA's twist on the

---

enforcement." Resp. Br. 23 (emphasis added). If this really is part of OSHA's contention, it's even less compelling than the other part of OSHA's argument. Agencies—like OSHA and the Department of Labor—are part of the executive branch, and the executive branch "enforce[s] federal law." *United States v. Texas*, 599 U.S. 670, 678 (2023). So if the rule is that nonenforcement can eliminate an injury, whether it is an agency doing the (non)enforcing makes no difference. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014) ("[A]dministrative action, like arrest or prosecution, may give rise to harm sufficient to justify pre-enforcement review.").

persistent nonenforcement rule. *See Corner Post, Inc. v. Bd. of Gov. of Fed. Res. Sys.*, 603 U.S. 799 (2024). In that case, the Supreme Court clarified that § 2401(a) "operates as a statute of limitations rather than a statute of repose." *Id.* at 812. Yet OSHA's theory turns a statute of limitations, including § 2401(a), into a statute of repose for anyone who was subject to a rule when it was first published.

And OSHA's argument is at odds with Article III generally. It's clear that an Article III injury can disappear before a plaintiff sues. When the facts creating an injury change in a way that eliminates that injury, there is no longer a live controversy. So, for example, a challenge to a ban on underage gun ownership becomes moot when the plaintiff becomes of age. *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 325 (4th Cir. 2021). A claim of monetary harm is eliminated when the defendant pays up. *Penegar v. Liberty Mut. Ins. Co.*, 115 F.4th 294, 303 (4th Cir. 2024). And a challenge to a law that imposes a restriction becomes moot when that law is amended to remove the challenged restriction. *N.Y. State Pistol & Rifle Ass'n v. City of N.Y.*, 590 U.S. 336, 338–39 (2020). A credible threat of enforcement is an Article III injury like any other. *See Bryant*, 1 F.4th at 285. So when changing facts make a threat no longer credible, "[a] 'Case' or 'Controversy' . . . no longer exists." *Hirschfeld*, 14 F.4th at 326. If every other injury can disappear before a plaintiff sues, a credible threat injury can disappear too. If persistent nonenforcement cannot make that credible threat injury

disappear, as OSHA contends, what else could?

**2.** Not only can nonenforcement eliminate an existing threat, but it can do so quickly. To be sure, some cases discussing persistent nonenforcement have cited decades of government inaction. *See, e.g.*, *Doe v. Duling*, 782 F.2d 1202 (4th Cir. 1986) (plaintiffs in the 1980s did not face a credible threat from a Virginia fornication statute that had not been enforced since before the Civil War). That fact pattern is the easy example of persistent nonenforcement. But it's not the only example.

It doesn't take a century or even decades for a credible threat to go away. Consider the cases that the Governor and LLR cited in their opening brief. These cases confirm that five years, four years, two years, or even nine months can be enough time for there to be no credible threat. *See* Opening Br. 17–18. While OSHA strained to distinguish these cases on their facts (that is, why those examples of nonenforcement are supposedly different than OSHA's nonenforcement), those distinctions miss the legal point that the Governor and LLR made: A few years of nonenforcement can eliminate any credible threat. Or as the Eleventh Circuit bluntly put it, a person "cannot challenge a statute enacted yesterday if there is no threat of enforcement against him today." *Doe as Next Friend of Doe #6 v. Swearingen*, 51 F.4th 1295, 1304 (11th Cir. 2022). Thus, OSHA could not respond to the no-more-credible-threat argument by saying it had only been five years.

That a credible threat can disappear quickly matters because courts assume that newly enacted laws will be enforced. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988). The 2016 interim final rule therefore may have brought with it a credible threat upon publication. That is the basis on which the Governor and LLR recognized that a credible threat may have existed in 2016. *See* Opening Br. 22.

Ultimately, the question is the same in every credible-threat case: Does the record reflect such nonenforcement that there is "no credible threat of future enforcement"? *Bryant*, 1 F.4th at 286. That "officials stand ready to perform their general duty to enforce laws" is not enough to show a credible threat. *Duling*, 782 F.2d at 1206. Nor are "past threats of prosecution" necessarily enough. *Id.* A credible threat exists only when that threat "is both real and immediate." *Id.*

**3.** OSHA says that the Governor and LLR do not "engage with the district court's statute of limitations analysis." Resp. Br. 21. That's not true. The district court's either–or theory was the explicit focus of the opening brief. *See, e.g.*, Opening Br. 1, 2, 14. The district court concluded under the "either" half of its theory that the Governor and LLR "were injured in 2016" when OSHA published the interim final rule. J.A.234. The point of the argument in the opening brief about the credible threat going away was to show that because the district court erred by failing to recognize that any injury from 2016 no longer existed, the limitations period was

8

irrelevant on the "either" half. By insisting that nonenforcement can't eliminate an existing injury, OSHA effectively makes the same error as the district court.

**B.      OSHA's nonenforcement eliminated any credible threat from the 2016 interim final rule's publication.**

Nonenforcement eliminated any threat from the 2016 rule's publication. *See* Opening Br. 9–10, 20–22. Resisting this conclusion, OSHA argues that it "acted almost immediately to inform the State" of the State's failure to increase civil penalties and "reiterated the issue in FAME reports every year." Resp. Br. 26. Even if OSHA "ha[d] not yet elected to enforce" the mandate on the State Plan, it has "engaged" the State Plan on this issue. *Id.* These actions, OSHA says, show that it "intended to enforce federal law." *Id.*

That continued-engagement argument cannot withstand scrutiny. OSHA's "engagement" with the State Plan was telling the State Plan that unincreased civil penalties "may be a finding" in the next FAME report if the State did "not take significant steps to adopt" the increased penalties that year. 2018 S.C. Follow-Up FAME Report, at 6, https://tinyurl.com/6jzrcxfn. Findings, recall, bring into "question the final approval status of a State Plan." OSHA, *State Plan Policies and Procedures Manual* 74 (May 6, 2020), https://tinyurl.com/2s48b22c. The State Plan took no steps to increase the civil penalties (which are set by the General Assembly). Yet the next year, OSHA failed to make the State Plan's unincreased penalties a finding. *See* 2019 S.C. FAME Report, at 5, https://tinyurl.com/5n7pdvxu. So too the

next year: no penalty increase for the State Plan, but still no finding from OSHA. *See* 2020 S.C. Follow-Up FAME Report, at 5, https://tinyurl.com/2sx3dcew. OSHA's failure to follow through was both an about-face and a deescalation of enforcement.

Meanwhile, as the State Plan surveyed the country, it saw other state plans similarly facing no consequence for not increasing civil penalties under the 2016 rule's mandate. *See* Opening Br. 10. OSHA knew that state plans weren't complying with the mandate, yet OSHA did nothing to enforce that mandate. *See Poe*, 367 U.S. at 502. South Carolina's own experience and its observations in other States confirmed OSHA's inaction.

Return to the library hypothetical from the Governor and LLR's opening brief. *See* Opening Br. 21. OSHA was just as engaged with the State Plan as the library where the librarian points to the sign and reminds the patron every time at checkout that overdue books result in a fine. But eventually, both the State Plan and the library patron come to realize that the threat means nothing because there's no enforcement coming. Put another way, at that point, the State Plan, like the library patron, was experiencing no credible threat of enforcement, so the Governor and LLR lacked standing to challenge the 2016 interim final rule.

That leaves OSHA with its effort to distinguish *Bryant*, in which this Court held that plaintiffs had standing to challenge a recent North Carolina abortion law

because they faced a credible threat. 1 F.4th at 289. That effort fails for two reasons.

First, this case differs from *Bryant* in a key aspect. There, the Court distinguished *Poe* because, unlike in *Poe*, "there [wa]s no evidence of 'open and notorious' violations of the challenged statutes." *Id.* at 286. Here, on the other hand, OSHA knew of and effectively "acquiesce[d] in" the State Plan's civil penalties not matching the federal ones. *Id.* This case is therefore like *Poe* and not like *Bryant*.

Second, OSHA is wrong to suggest that *Bryant* found a 50-year-old statute still posed a credible threat of enforcement. The *Bryant* plaintiffs challenged the *amendments* to that law "shortly after" those amendments took effect. *Id.* at 287. These amendments showed North Carolina's "renewed interest in regulating abortion," as the "political salience of the abortion debate was palpable." *Id.* State officials there, unlike OSHA here, didn't go years without enforcing the challenged law. They didn't turn a blind eye to noncompliance, as OSHA did. OSHA's reliance on *Bryant* is therefore misplaced. *Bryant* doesn't support the district court's implicit conclusion that the credible threat never went away. It undermines it.

## II.    The Governor and LLR faced a credible threat when OSHA began enforcing the rule in 2022.

When any threat from the rule's 2016 publication went away, the Governor and LLR lacked an injury. But OSHA's 2022 enforcement actions created a credible threat, so the Governor and LLR suffered a new injury, which started a new limitations period. OSHA resists this conclusion in three ways, but none is

compelling.

**A.** OSHA's forfeiture argument is incorrect. *See* Resp. Br. 21–22. "[I]issues raised for the first time on appeal generally will not be considered," *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993), but "parties are not limited to the precise arguments they made below," *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534 (1992). Or as the Court put it recently, "variations on arguments made below may be pursued, so long as the appealing party asked both courts to evaluate the same fundamental question." *United States v. Boyd*, 5 F.4th 550, 556 (4th Cir. 2021) (cleaned up).

That's what the Governor and LLR have done. They argued below that OSHA didn't take any steps to enforce the mandate on state civil penalties until 2022. *See* J.A. 64 ("Despite Defendants' claims that state and federal penalties had to match, they made no effort to actually enforce that view on the State Plan between 2016 and 2022"). Thus, prior to 2022, the Governor and LLR didn't have standing. *See* J.A. 64 ("Without Defendants taking what is typically the first step in revoking the State Plan, Plaintiffs could not point to an Article III injury"). But after the 2021 FAME Report and proceedings against Arizona, they faced a credible threat, giving them standing and commencing the limitations period. *See* J.A. 65 (the 2021 FAME Report and proceedings against Arizona "created a credible threat of enforcement, which constitutes an Article III injury"). The argument on appeal is tailored to the

district court's order, so the argument now focuses more on why any threat from 2016 dissipated than it did below. But both below and here, the arguments drive at "the same fundamental question[s]," *Boyd*, 5 F.4th at 556: (1) whether OSHA's continued nonenforcement left the Governor and LLR without an Article III injury; and (2) whether OSHA's 2022 enforcement actions created a credible threat to confer standing and start the limitations clock.

**B.** Just as everyone here agrees on the general existence of the nonenforcement rule, everyone also agrees that "a new limitations period can start with each 'discrete' injury." Resp. Br. 24. This time, OSHA simply contends that rule doesn't apply.

OSHA insists that its 2022 actions don't represent a new injury because this is simply a case where "an old injury has resurfaced." *Id.* That's incorrect. The only "old" thing here is that the distinct injuries to the Governor and LLR stem from the same old legal authority: the 2016 final agency action. But the credible threat injuries themselves stem from different sources. The first injury in 2016 was a credible threat from the rule's publication. That injury went away when OSHA made no effort to enforce the rule's mandate on state civil penalties. The second injury (the one that gives rise to this lawsuit) is from OSHA's concrete enforcement steps six years later.[2]

---

[2] Because the threats are distinct, tolling isn't the proper framework. Equitable

What makes an injury "discrete" has nothing to do with whether the injuries emanate from the same law or regulation, as OSHA seems to imply. "It is" instead "a new factual development that gives rise to a new cause of action." *Root v. County of Fairfax*, 541 Fed. App'x 333, 335 (4th Cir. 2013). Thus, if the New York legislature had reinstated the law from *N.Y. State Pistol & Rifle Ass'n*, the plaintiffs could have again brought a challenge, and no one would have suggested that it was simply an "old injury . . . resurfac[ing]." Resp. Br. 24. Likewise, if OSHA had initiated revocation proceedings against the State Plan in 2016, later rescinded those efforts, and then initiated revocation proceedings again in 2022, the earlier proceedings wouldn't affect the State's ability to challenge the later ones. Each act would stand alone and provide a separate cause of action.

Of course, none of this changes when the injury giving rise to the cause of action is a credible threat of enforcement. A credible threat is "an injury in fact sufficient for Article III standing." *Driehaus*, 573 U.S. at 168. Thus, a *new* credible threat of enforcement of the same law or regulation is a *new* injury. And "[w]ith each new injury, a new claim arises, and the statute of limitations period begins anew."

---

tolling does not logically fit a scenario when a credible threat goes away. Equitable tolling prevents unfairness from barring a plaintiff's claim when the plaintiff has been diligent, but some extraordinary circumstances kept him from bringing that claim. *See CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 476 (4th Cir. 2015). When a credible threat goes away, a plaintiff is presumably aware of that change and wasn't "tricked" into not filing suit. Resp. Br. 19. Courts therefore do not appear to apply equitable tolling to injuries based on a credible threat.

14

*Flynt v. Shimazu*, 940 F.3d 457, 463 (9th Cir. 2019).

The contrary view also runs counter to the purpose of the credible-threat doctrine. The credible-threat doctrine seeks to save plaintiffs from having to "fly as a canary into the coal mine" to challenge a law. *Bryant*, 1 F.4th at 286. Yet if a *previous* threat of enforcement, no matter how ancient, could limit a plaintiff's ability to defend against a *new* threat, then the credible-threat doctrine means nothing to whoever faces that new threat. Better to follow the Supreme Court's clear counsel in *Driehaus*: A credible threat is "an injury in fact sufficient for Article III standing." 573 U.S. at 168. And "a new limitations period can start with each 'discrete' injury." Resp. Br. 24.

OSHA may resist that outcome here on a factual basis, but it must make those factual arguments within this well-settled legal framework.

**C.** OSHA's last argument about 2022—that its actions that year didn't create a credible threat—is a factual one that tracks the "or" half of the district court's theory. Under the district court's reasoning, the Governor and LLR "still face[d] no credible threat" in 2022. J.A.234. That conclusion—and OSHA's defense of it—is wrong. OSHA did two things that, standing alone, created a credible threat. And in combination, there's no doubt that they gave rise to such a threat.

First, OSHA began revocation proceedings against Arizona. *See* Arizona State Plan for Occupational Health and Safety; Proposed Reconsideration and Revocation,

87 Fed. Reg. 23,783 (Apr. 21, 2022). Neither point OSHA makes about Arizona persuades that this step was insignificant. OSHA first contends that South Carolina could find no threat against its State Plan based on proceedings against Arizona because the "States operated entirely distinct State plans." Resp. Br. 29. Yet OSHA's *but see* cite to *Steffel v. Thompson* undermines this argument. The plaintiff there had standing despite leaving before his companion, who stayed and was then arrested and charged. *See* 415 U.S. 452, 455–56 (1974). Just as that plaintiff could discern a credible threat from the arrest of someone doing what he had been doing, South Carolina's State Plan could discern a credible threat from OSHA beginning revocation proceedings against another state plan that hadn't increased its state civil penalties.

OSHA then insists that "the revocation proceedings against Arizona were multi-faceted." Resp. Br. 30. Perhaps, but that does not mean that Arizona's civil penalties being one facet could not put other state plans on notice. OSHA itself thought civil penalties were significant enough to include them in the Arizona notice. That was the first time that OSHA began enforcing the 2016 interim final rule's mandate, so it marked a shift in OSHA's position. More than that, this was the first time, to the Governor and LLR's knowledge, that OSHA *ever* published a notice that it intended to revoke a state plan's final approval. The shocking nature of OSHA's decision to seek revocation of a state plan cannot be overstated.

Second, and on the heels of the Arizona notice, OSHA made the unincreased civil penalties a finding in South Carolina's 2021 FAME Report. *See* 2021 S.C. FAME Report, at 18, https://tinyurl.com/5dx2en3r. This too demonstrated a drastic change for OSHA, which for the previous five years hadn't bothered to make this a finding, despite saying years before that it would.

OSHA tries to downplay this fact, noting that "[n]o revocation or withdrawal proceedings were mentioned or initiated" with the finding. Resp. Br. 7. But findings are a big deal. A finding calls into "question the final approval status of a State Plan" and requires "corrective action by the State Plan to ensure it is [at least as effective]" as federal standards. OSHA, *State Plan Policies and Procedures Manual* 74. In other words, a finding means "fix it or else."

One other thing confirms that there a credible threat appeared in 2022: Other States, catching wind of that threat, saw that as the moment to increase their civil penalties to comply. *See* Opening Br. 24–25 (citing North Carolina and Minnesota as examples). That multiple States saw OSHA's 2022 actions as a reason to increase their penalties indicates OSHA's efforts to enforce the interim final rule had ramped up.

*    *    *

From here, the analysis is simple. In fact, OSHA doesn't challenge this part of the argument. If the Governor and LLR faced a credible threat to the State Plan

17

from OSHA's 2022 enforcement actions, then their 2023 lawsuit is timely under § 2401(a)'s six-year limitations window. The district court therefore erred in dismissing claims four and six.

## **CONCLUSION**

For these reasons, the Court should reverse the district court's order dismissing claims four and six as untimely, and the case should be remanded for further proceedings.

Respectfully submitted,

<u>s/Wm. Grayson Lambert</u>
Wm. Grayson Lambert
*Chief Legal Counsel*
Erica Wells Shedd
*Deputy Legal Counsel*
Tyra S. McBride
*Deputy Legal Counsel*
Cameron R. Cox
*Deputy Legal Counsel*
OFFICE OF THE GOVERNOR
South Carolina State House
1100 Gervais Street
Columbia, South Carolina 29201
(803) 734-2100
glambert@governor.sc.gov
eshedd@governor.sc.gov
tmcbride@governor.sc.gov
ccox@governor.sc.gov

*Counsel for Governor McMaster*

Robert E. Horner
S.C. DEP'T OF LABOR, LICENSING & REGULATION
P.O. Box 11329
Columbia, South Carolina 29211
803-896-4199
bob.horner@llr.sc.gov

*Counsel for S.C. Dep't of Labor, Licensing & Regulation*

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    This brief contains *4,412* words.

2.     This brief complies with the typeface and type style requirements because:

    This brief has been prepared in a proportionally spaced typeface using *Microsoft Word* in *14 pt Times New Roman*.


Dated: <u>February 2, 2026</u>        <u>s/Wm. Grayson Lambert</u>
                                            *Counsel for Governor McMaster*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 2nd day of February, 2026, I caused this *Reply Brief of Appellants* to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel of record.

s/Wm. Grayson Lambert
*Counsel for Governor McMaster*